Frances GAGE, Appellant,

v.

CONNECTICUT GENERAL LIFE INSUR-
ANCE COMPANY, a Corporation,
Respondent.

No. 22066.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1954.

W. B. Ennis, S. P. Sandler, Gene R.
Martin, Kansas City, for appellant.

Henry G. Eager, Henry I. Eager, Black-
mar, Newkirk, Eager, Swanson & Midgley,
Kansas City, B. F. Holme, Jr., Hartford,
Conn., of counsel, for respondent.

BROADDUS, Judge.

This is an insurance case. A jury was waived and the cause tried to the court. Judgment went for defendant and plaintiff appealed. The cause was submitted under the following agreed statement of facts:

"That on July 30, 1951, as well as for some time prior thereto, the plaintiff, Frances Gage, was employed by Trans World Airlines, Inc. (hereinafter called TWA) at its Fairfax, Kansas Overhaul Base; that on said date there was in force and effect between the defendant as insurer, TWA as the employer and the plaintiff as an employee-insured defendant's 'Group Accident and Sickness Policy' numbered 6191 providing for certain payments for disability due to accident or sickness and defendant's 'Group Hospitalization Benefit Policy (Non-Occupational)' numbered 5043 providing for reimbursement for hospitalization, medical and miscellaneous expense incurred by reason of injury or sickness; that on said date the plaintiff was insured under defendant's Group Certificate numbered 30244 which had been issued pursuant to the aforesaid master policies; that the attached copies of the said policies and the certificate (which are respectively marked 'Joint Exhibits 1, 2 and 3') may be considered to be in evidence herein.

"That on July 30, 1951, due to flood conditions, public authorities had previously closed the said Fairfax, Kansas, area to usual and ordinary traffic including private passenger vehicles; that TWA by earlier arrangement with the public authorities was given permission to bring its Fairfax employees, including plaintiff, to work by the use of buses and for such purpose had previously chartered a number of buses from Yellow Cab Company of Missouri; that the cost of such bus transportation for the said TWA employees, including plaintiff, was paid by employer-TWA and no part of such cost was paid or borne by the employees or any of them.

"That on July 30, 1951 at about 7:15 A.M. plaintiff was a passenger in one of said buses and enroute to her said place of employment; that on the Intercity Viaduct while in Missouri a collision occurred between the bus in which plaintiff was so riding and certain other buses, resulting in accidental injuries to plaintiff due to which she became totally disabled and prevented from working for a period of time from and including July 30, 1951, through and including September 17, 1951 (a total period of 7 weeks and 1 day); that on days previous to July 30, 1951, the TWA employees including plaintiff who were transported by said chartered buses were 'timed' in upon reaching their place of employment in Fairfax and thereafter worked eight full hours including ½ hour with pay for lunch; that said employees including plaintiff did not receive any remuneration or pay for the time consumed while traveling to work on these chartered buses on this date or earlier thereto but that their remuneration and pay commenced from such time as they 'timed' in upon reaching their respective places of employment in the Fairfax District.

"That the plaintiff returned to work after the flood on July 26, 1951, and worked on that date, on July 27, on July 28 and on July 29, 1951 and that on these said days she was paid for eight full hours as aforesaid; that the plaintiff would have presumably worked on the same hourly basis on said July 30, 1951 but that the said injury prevented her from reporting to or engaging in her work; that plaintiff was transported to work by such buses on these days immediately prior to the accident as well as on the date of said accident, all pursuant to duly promulgated schedule for TWA employees attached hereto as 'Joint Exhibit 4' and which may be considered in evidence.

"That plaintiff made no claim for any Workmen's Compensation award against either TWA or its compensation-insurer arising out of this accident but that on November 26, 1951 she released said Yellow Cab Company of Missouri from all liability arising therefrom.

"That plaintiff was employed in the Upholstery Department of TWA as a Master Mechanic and had been employed and engaged prior to and on said date of July 30, 1951 by what was a Missouri contract of employment.

"That if plaintiff's above accident comes within the coverage of the attached group insurance policies and certificate then she is entitled to recover as follows: For total disability of 7 weeks and 1 day $285.71; for medical visits $18.00; for hospital expense $32.00; for x-ray, laboratory, drugs, dressings, etc. $25.20, totalling $360.91."

The Group Accident and Sickness Policy issued March 1, 1939, provides weekly indemnities for total and continuous disability by reason of accidental injury or sickness (Joint Exhibit 1, Joint Exhibit 3.) The first page of this policy says:

"The insurance hereunder shall not cover any disability due to injury arising out of, or in the course of, any employment for wage or profit; nor shall it cover any disability due to sickness for which benefits are provided under any workmen's compensation or similar law."

All of the rest of the benefits here involved are found in the Group Hospitalization Policy (Non-Occupational) together with all endorsements (Joint Exhibit 2). This master policy was issued March 1, 1939, to plaintiff's employer, and within stated limits affords daily indemnity for hospitalization, for necessary services and supplies and under certain conditions for outpatient nursing expense (Joint Exhibit 3). The first page of this policy provides:

"Limitations. No benefit or reimbursement will be paid, * * * (c) for confinement resulting from accidental injury arising out of, or in the course of employment or from sickness for which benefits are provided under any workmen's compensation or similar law."

On November 1, 1944, a Group Medical Expense Benefits endorsement was added to this policy (Joint Exhibit 2) which within certain limits included payment to physicians or surgeons for hospital, office or home visits necessary for treatment (Joint Exhibit 3.) However, this language also appears:

"Limitations. No benefit shall be paid * * * (2) for fees charged for treatment of accidental injury arising out of, or in the course of employment or from sickness for which benefits are provided under any workmen's compensation or similar law."

Plaintiff contends that the court erred in that it failed to apply the rule that where the terms of an insurance policy are ambiguous they are to be construed against the insurer and liberally in favor of the insured. Of the correctness of that rule there can be no doubt. On the other hand, it is equally well settled that where the language of an insurance policy is plain and unequivocal, there is no room for construction, and the words employed must be given their usual and natural meaning. Courts are without authority to re-write contracts of insurance.

The question presented here is whether plaintiff, Mrs. Gage, was injured "out of, or in the course of", her TWA employment when she was injured while riding to work in an employer-furnished bus at no expense to herself on the only possible route, and when no other means of transportation was available.

The parties in their able and exhaustive briefs agree that it is obvious from the language of the policies that defendant's intention was to provide certain benefits to the employees of TWA for injuries sustained while "off-the-job". An opposite construction would mean that TWA voluntarily undertook to pay premiums for group disability, hospitalization, medical and surgical insurance on its many employees while at the same time it was required to provide a duplicating workmen's compensation for on-the-job accidents and medical attention.

▉ ·Since first used in Missouri in 1925 (now Section 287.120(1) RSMo 1949, V.A.M.S.) "out of" has acquired a settled and widely accepted meaning, and since the instant policies became effective long after "out of" had become commonly used that particular use should be persuasive for our present inquiry. Essentially it is that any person acts "out of" his employment when there reasonably can be said to be a direct cause and effect relationship between his employment and his injury. Or as was recently expressed in McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344, 346:

> "'It arises "out of" the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'"

See also Foster v. Aines Farm Dairy Co., Mo.Sup., 263 S.W.2d 421, 423, and Conyers v. Krey Packing Co., Mo.App., 194 S.W.2d 749, 752, with cases therein.

▉ And so it was Mrs. Gage's employment in Fairfax which directly caused her presence on the bus which was on the Intercity Viaduct at 7:15 A. M. on July 30, 1951; the trip was not only incidental to her job but indeed was *necessary* if she wanted to work. Such a transportation arrangement was beneficial to both the employee and the employer. Indeed is there any reason at all apart from her employment relationship which may account for her presence on this bus? The admitted facts indicate that there is none.

▉ What then does "in the course of" mean? The phrase invariably goes hand in hand with "out of" and likewise has acquired an early and distinctive usage. In general, this refers to a time within the employee's regular period of employment and at a likely place while engaged in matters which fairly may be said to be incidental to the employment relationship. Foster and Conyers cases, supra. Here the plaintiff's use of the bus was obviously incidental to her TWA job when we recall that at that time the published departure and arrival schedule (Joint Exhibit 4) was the only way in which Greater Kansas City, Missouri, residents could get to the TWA Overhaul Base at Fairfax, Kansas.

Similar "off the premises" transportation situations have been held to fall within the provisions of The Workmen's Compensation Law of Missouri, Section 287.010 et seq., RSMo 1949, V.A.M.S. In Sanderson v. Producers Commission Ass'n, 360 Mo. 571, 229 S.W.2d 563, an employee's death while driving home from work in his employer's car was held to be compensable when the trip was undertaken with the knowledge and acquiescence of the employer and was at least partly in the latter's interest because it facilitated the employee's early arrival at work the next morning, 229 S.W.2d loc. cit. 567. In Sylcox v. National Lead Co., 225 Mo.App. 543, 38 S.W.2d 497, the employee was held to be covered when he was injured while alighting from an employer-owned and operated bus some four miles away from the regular place of work. The court there said, 38 S.W.2d loc. cit. 500:

> "* * * even though the employee is not paid for the time spent on the bus, he is yet in the course of his employment, if he rides by the employer's order, or with his knowledge and acquiescence; * * * the relationship of master and servant may extend beyond the hours of the servant's actual labor, and to places other than the premises on which he is employed."

And, in a case where a great many authorities were considered, it was held that injuries to a teamster, struck by an automobile, on the highway while going from the employer's barns, after the day's work was done, to a bus furnished by the employer to take employees home, arose "out of and in the course of his employment." Howes v. Stark Bros. Nurseries & Orchards Co., 223 Mo.App. 793, 22 S.W.2d 839, 840.

While the exact question here presented is one of first impression so far as the appellate courts of this State are concerned, the courts of other jurisdictions have had

occasion to consider it. In Morgan v. Equitable Life Assurance Society, La.App., 22 So.2d 595, 596, a group disability policy which insured against non-occupational injuries and sickness also provided: " 'Limitations' * * * [d] no benefits * * * are payable 'for disability due to accidental bodily injuries arising out of and in the course of the employee's employment'." There the claimant was similarly injured while riding as a passenger upon one of her employer's buses while it was traveling upon the employer's premises inside an ordinance plant where she worked. It was the practice for all employees to report at the main entrance to the restricted area where these buses then would transport them to and from their various places of work. No wages were earned for time on the bus but instead only for time actually spent at work. A plaintiff's recovery was denied, the court saying:

"In view of these undisputed facts the question that arises and must be determined is whether the accident arose out of and occurred in the course of plaintiff's employment. If so, under the plain and unambiguous terms of the policy she is without right to recover herein. * * *

"Paragraph (d) of 'Limitations' quoted above, for the purposes of the group policy makes clear what the policy means by 'non-occupational' injury. It is clearly reflected from the language of this paragraph that if the accident and consequent bodily injury or injuries arose out of and in the course of employment it should be classed as occupational, and would be compensable under the Workmen's Compensation Law; otherwise, the accident and consequent injury or injuries would be nonoccupational."

And continuing as to policy construction, the court said:

"It seems obvious that the group policy was intended to measurably protect employees against loss for periods of disability in case of accident,

not to exceed ten weeks, where the facts of the accident and consequent injury did not warrant the payment of workmen's compensation. The policy clearly contemplates that so long as an employee is in the discharge of the duties of his occupation or is engaged in some activity necessarily incidental thereto, in the furtherance of the employer's business, the policy provisions would not apply."

The case of Maltais v. Equitable Life Assurance Society, 93 N.H. 237, 40 A.2d 837, also construed the same non-occupational group policy which excluded loss from "injuries arising out of and in the course of" the insured's employment. The court there remarked, 40 A.2d loc. cit. 839: "The policies were obviously designed to afford a workman protection (with certain exceptions not here material) in the event of an injury for which his employer was not liable either at common law or under the provisions of chapter 216."

The injury to Maltais had occurred as a result of "horse-play" with a fellow employee and since an air hose which caused the injury was necessary in his particular work, it was said to fall within New Hampshire's compensation statute and, therefore, to preclude insurance coverage.

Two other courts reached the same conclusion. Carter v. Metropolitan Life Ins. Co., 47 Ga.App. 367, 170 S.E. 535; Metropolitan Life Ins. Co. v. Wilson, Tex.Civ. App., 102 S.W.2d 454, 455. In each of those cases the policy provision was exactly the same as in the case at bar, viz.: " '* * * arising out of, or in the course of, any employment for wage or profit.' "

In our opinion the language of the policies is plain and unambiguous. The learned trial court ruled correctly. The judgment is affirmed.

All concur.