52 Wn.2d 518 (1958)
326 P.2d 1015
HENRY E. WOLF, as Executor, Appellant,
v.
WASHINGTON HOSPITAL SERVICE ASSOCIATION, Respondent.[1]
No. 34592.
The Supreme Court of Washington, Department One.
June 26, 1958.
Miracle, Treadwell & Pruzan, for appellant.
Lewis L. Stedman, for respondent.
OTT, J.
October 1, 1954, Mrs. Nellie Wolf was accepted for membership under the Washington Hospital Service Association's Blue Cross medical and hospital plan. The *519 certificate of membership contained the following exclusionary provision:
Part II, subd. B: "Blue Cross will not provide [hospital services and benefits for]: ... (3) Any condition which existed at the effective date of membership."
Mrs. Wolf indicated in her written application for membership (among other matters relative to her health) that she was being treated medically for polycythemia. January 15, 1956, she was admitted to the hospital, where a splenectomy was performed. When the association refused to pay the hospital expense, this action was instituted to recover the amount thereof.
The association's answer to the complaint admitted the hospitalization and the reasonableness of the charges, but denied liability by virtue of two affirmative defenses, (1) that the surgery resulted from a condition which existed at the date of the issuance of the membership certificate, and (2) that decedent's failure to mention in her application that she had an enlarged spleen voided the contract.
The reply denied the allegations of the affirmative defenses. The cause proceeded to trial before a jury. At the conclusion of plaintiff's case, the trial court sustained defendant's challenge to the sufficiency of the evidence and granted a nonsuit. The plaintiff has appealed.
The issue raised by respondent's second affirmative defense was not mentioned in the court's findings, nor was any reference made thereto either in the appeal briefs or in oral argument. We are here concerned only with the respondent's first affirmative defense, and, as to that issue, we have but one quaere: Was there sufficient evidence presented in appellant's case in chief to put the respondent on its proof that the splenectomy resulted from a condition which existed at the time of the issuance of the membership certificate?
The medical testimony presented on behalf of the appellant upon the issue of whether the splenectomy was the result of polycythemia was that of Dr. Weinstein, who had treated decedent medically for polycythemia, and Dr. Sheridan, *520 who performed the splenectomy. Their testimony is in part as follows:
Dr. Weinstein: "Q. What was her purpose in having been admitted to the hospital at that time? A. Because of the frequent attacks of pain in the left upper quadrant and the tenderness, I felt the spleen might rupture if she continued to have these infarcts develop.... Q. And do I understand correctly, it was that dead tissue that you were afraid might rupture? A. It is the same thing. Perhaps I can describe it by saying that if you have a pear that has a rotten section in it and you push your finger into it, it is very mushy and you can break through into the body. The same idea would hold true here. The tissue is soft. It is very easily broken and the idea is that it might rupture, and allow bleeding into the abdominal cavity. Q. All right, sir. And that was the reason she was admitted to the hospital and her spleen taken out? A. That's right. Q. Now is it possible for a person to have polycythemia without having an infarcted spleen? A. Yes it is. Q. In other words, is it accurate then to say that an infarcted spleen is not in 100 per cent of the cases inevitably a part of polycythemia? A. That's right. Q. Some people with polycythemia can get an infarcted spleen and some people can have the disease without ever developing an infarcted spleen? A. I think that's true. Q. Also, is it an accurate statement to say that a person can have an infarcted spleen who never had polycythemia? A. Yes. Q. Is infarcted spleen a medical condition that requires specific treatment? A. It is a medical condition, of course. Do you mean it is medical rather than surgical? Q. No. Would you say an infarcted spleen is a separate medical condition you would have to think about one way or the other? A. Yes. Q. Is it possible to have an enlarged spleen without a splenic infarct? A. Yes. Q. You can have an enlarged spleen and yet not have an infarct, is that correct? A. Yes. Q. Is it possible to have a spleen which is larger than normal but which does not require surgical removal? A. Yes it is. Q. Is it possible to have an infarct in a spleen which isn't enlarged? A. Yes, it could. Q. Now, Doctor, to the best of your medical knowledge and to the best of your knowledge of Mrs. Wolf's condition, did Mrs. Wolf have a splenic infarct on October 1, 1954? A. Not as far as I could determine. Q. To the best of your medical knowledge and to the best of your knowledge of Mrs. Wolf's condition, was Mrs. Wolf's condition such that as of October 1, 1954 her spleen had to be surgically removed on that *521 date? A. No, it was not. Q. And to the best of your medical knowledge, she developed a condition subsequent to October 1, 1954 which would require the surgical removal of her spleen, is that correct? A. That's right."
Dr. Sheridan: "Q. There are people then  of course, as far as we know, in Mrs. Wolf's case, she had polycythemia for a long time without having an infarcted spleen, is that correct? A. That's correct. Q. And is it possible to have an enlarged spleen without having an infarcted spleen? A. Yes, it is possible to have an enlarged spleen without it being infarcted. Q. And is it also fair to say that you can have an enlarged spleen which does not require surgical removal? A. Yes, it is certainly more than fair to say that. Q. In other words, there are many people with enlarged spleens that don't require removal of the spleen? A. That is right, and it is quite rare that you would consider removing one.... Q. Polycythemia you say  A. We generally regard polycythemia as not a surgical disease. Q. Would you call an infarcted spleen a condition that ordinarily requires surgical attention? A. No, not under ordinary circumstances. In my opinion this is an unusual situation. Q. I see. Where you have polycythemia accompanied by an infarcted spleen as in this case, then does it require surgical attention? A. I think that is quite obvious or we wouldn't have undertaken to remove the spleen. Q. That's true. Do you sometimes encounter an infarcted spleen in people who have never had polycythemia? A. Oh, yes. Q. In other words, polycythemia is a condition that can be caused, is it fair to say, by a number of different bodily infirmities or illnesses? A. I think what you are meaning is that infarction can be caused by a number of different illnesses, and the answer to that is yes."
[1] In cases being tried to the jury, we are committed to the rule that a challenge to the sufficiency of the evidence admits the truth of the opposing party's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the party against whom the motion is made. Huttner v. MacKay, 48 Wn. (2d) 378, 383, 293 P. (2d) 766 (1956), and cases cited.
[2] Applying this rule to the instant case, the evidence established that the hospitalization and splenectomy were *522 the result of an infarcted spleen; that such condition developed subsequent to the issuance of the membership certificate, and that it arose from an undetermined cause.
[3] Appellant's proof established a prima facie case for recovery. The burden was then upon the respondent to prove that the medical and hospital expenses fell within the exclusionary provisions of the policy. Angelus v. Government Personnel Life Ins. Co., 51 Wn. (2d) 691, 321 P. (2d) 545 (1958).
The judgment is reversed, and the cause remanded with instructions to grant a new trial.
HILL, C.J., MALLERY, FINLEY, and HUNTER, JJ., concur.
August 18, 1958. Petition for rehearing denied.
NOTES
[1] Reported in 326 P. (2d) 1015.