NORTH KANSAS CITY MEMORIAL
HOSPITAL, Respondent,

v.

Bertha Mae WILEY, Administratrix, Estate
of William A. Wiley, Deceased,
Respondent,

and

Group Hospital Service, Inc., Appellant.

No. 23785.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1964.

Harry L. Thomas, Max O. Bagby, Kansas City, for appellant.

James P. Aylward, William B. Teasdale, James P. Aylward, Jr., Kansas City, for respondent.

HUNTER, Judge.

This is a suit by plaintiff-respondent, North Kansas City Memorial Hospital in

the sum of $1,091.81 against defendant, William A. Wiley, for services rendered him while he was a patient at the hospital.[1] In turn, Wiley added as defendant (appellant) Group Hospital Service, Inc., by reason of its assumption of a certain hospitalization contract originally issued by Health Service, a corporation, earlier a party but later dismissed from this action. The jury, as directed by the court, found for plaintiff hospital and against defendant Wiley in the sum of $1,081.30, and found for defendant Wiley on his cross claim against defendant Group Hospital Service, Inc., in the sum of $669.50. Group Hospital Service, Inc., hereinafter referred to as Blue Cross, has appealed from the cross claim judgment against it.

The Blue Cross policy is of the usual type and provides certain benefits, payments and services for hospitalization of the subscriber "except as limited in Article IV or excluded in Article V." Article V contains the following exception from the general benefits provided: "Article V—Benefits Not Provided. *Benefits shall not be provided for: * * * (b) Hospitalization for any occupational condition, ailment, or injury arising out of and in the course of employment,* or which is furnished to a Subscriber under the laws of the United States or any state of political subdivision thereof." (Italics ours.) Blue Cross denies liability for Wiley's hospital expenses on the ground that these expenses were occasioned by an injury he received arising out of and in the course of his employment and these were exempted from policy coverage under Article V thereof.

On June 4, 1958, Wiley in the course of his employment suffered an unusual and abnormal strain to his low back. This back condition seemed to worsen. On July 5, 1958, he was hospitalized for that injury in North Kansas City Memorial Hospital and remained there continuously as a patient from July 5, 1958, until August 21,

1. William A. Wiley died April 28, 1964, while his appeal was pending and his widow, Bertha Mae Wiley, was appointed administratrix of his estate and substituted as respondent in this cause.

1958, when he was discharged therefrom. The admitting diagnosis was probable disc, lumbar and hernia; and the final diagnosis was herniated lumbo sacral disc, congenital bladder, neck contracture, prostatitis and cystitis.

At the trial on June 25, 1962, none of the attending physicians or other doctors were called as witnesses. Rather, the evidence touching the issue of the allocation of Wiley's hospital expenses consisted of the hospital reports and the testimony of the hospital administrator.

According to the hospital records, "patient admitted for back pain, with radiation down into legs". The next day, July 6, he was experiencing trouble passing urine. A portion of that day's hospital report read "seen in consultation by Dr. Charles Vilmer and Dr. Revis Lewis for back symptons and by Dr. Andrews for urinary obstruction and infection." On July 10, his temperature rose to 102 degrees with a diagnosis of urinary infection. On July 12th a thrombosed painful hemorrhoids condition was diagnosed and a two times normal size prostate was noted. On July 14th, the hospital records reported, "Problem at present is whether care of prostate and diagnostic tests should precede any definite surgical therapy of disc, and if so, whether either or both fall under compensation." On July 15th, the hospital report stated, "Complaining of soreness over the hypogastric region. Catheterized 1270 cc. obtained. Bladder spasm during catheterization. Rectum still reveals hemorrhoids. Prostate enlarged. Dr. Andrews to see and go ahead with GU workup and therapy. Treatment for disc will be deferred during this."

The above is but partly illustrative of the contents of some sixty-seven pages of hospital reports concerning Wiley, his complaints, medical examinations, medical diagnosis and medical treatments, including therapy, x-rays, medicines and injections, between July 5 and August 21, 1958, while a patient there.

Appellant Blue Cross' first contention is that the trial court erred in permitting Witness Rich, the hospital administrator, over objection, to testify from an examination of the hospital records that charges in the amount of $453.72 were applicable to back injury and that charges in the amount of $669.50 were not for the treatment of Wiley's back and spine injury but were for other injury or illness, namely, the genito-urinary system. It is Blue Cross' position that Witness Rich, who was not a medical doctor but rather whose only possible relevant experience was as hospital administrator with several years experience in managing the hospital's drug store, was not and could not be qualified as a medical expert and that only a medical doctor would be qualified to make the judgments and render the opinions to which Witness Rich testified. Witness Rich based his expert testimony on his interpretation of the medical records of the North Kansas City Memorial Hospital concerning Wiley. Rich testified, "It (hospital record) tells in essence what has happened to him (Wiley) during the time that he was in the hospital. It is made by doctors, laboratory technicians, nurses, all of those who work at the hospital and have authority to enter on this the results of their work on Mr. Wiley."

The general definition of an expert witness is one who by reason of education or specialized experience possesses superior knowledge respecting a *subject* about which persons having no particular training are incapable of forming an accurate opinion or of deducing correct conclusions. Giambelluca v. Missouri Pacific Railroad Company, Mo.Sup., 320 S.W.2d 457, 463; Gaddy v. Skelly Oil Co., Mo.Sup., 259 S.W.2d 844; McAnany v. Henrici, 238 Mo. 103, 141 S.W. 633.

Where the subject is a medical one such as the cause or effect of disease or injury on the human system, which is not a subject of common knowledge, the proof

must be by a witness or witnesses possessing special knowledge and skill in the science of medicine. This is especially so where the case presents issues involving pathology of disease and subjective effects of injury through trauma. See, 46 C.J.S. Insurance § 1357(c), pages 537–538; Ryan v. Sheffield Car & Equipment Co., Mo.App., 24 S.W.2d 166. This is in accordance with the general rule that except to the extent the physical condition of a person is open to ordinary observation by persons of common experience, opinion evidence concerning the diagnosis, causes and effect of diseases, ailments and kindred matters of medical practice is limited to the opinions of experts in the technical field involved— that is, of physicians. 20 Am.Jur., Evidence, Section 862, page 722; Carlsburg v. Wesley Hospital, 182 Kan. 634, 323 P.2d 638.

In deciding whether the use of certain drugs was for Wiley's back injury or for his genito-urinary system and unrelated to the back injury Rich stated, "Its an impression, an impression or a judgment that we (Rich) obtain from running a drug store. I run a drug store. * * * I have some knowledge of the drugs that are used." As to the allocation of the daily charge for hospital room and board Rich stated, " * * * when did the room and board charge become applicable to the back injury and when did it become applicable to the genito-urinary system. Now, we can tell the infection from the nursing notes as to the elevation in temperature and we can tell it from the remarks the physician makes in his daily progress notes, and we can tell another thing about what kind of medicines the physician was ordering. By putting these three together I have made a judgment as to at what day the room and board, as an example, would appear to become applicable to genito-urinary problems these other things not being present, and the progress notes indicating the physician's concern and treatment for the back, then the room and board in that, on that particular day or series of days would become

applicable to the back injury." * * * "I assigned his charges to the back when actually he had an in-dwelling Foley catheter for his genito-urinary problems, but it was according to the doctors' progress notes and nursing notes, the medications he was on, it was of minor significance as compared to the other, and this bounced back and forth." * * * "I'm sure that every day that Mr. Wiley was in the hospital he was being treated to some degree for his back injury, whether it was just lying on bed boards or whether it was pelvic traction, whatever it might be, I'm sure that there was some element of treatment for his back. At the same time there was elements on almost every day of the treatments of this genito-urinary—."

■ There was no allocation or designation in the mentioned hospital records or the resultant billings as to what expenses were for the back injury and its effects as contrasted with the genito-urinary system ills. Witness Rich alone made these allocations of various hospital charges by indulging in medical judgments and medical opinions and in some instances, speculation, based on the sixty-seven pages of hospital reports of the doctor, nurses and other hospital personnel concerning Wiley. We are convinced that he was not qualified to do so. The medical determinations which he necessarily had to make in order to allocate the expenses as he did were not a matter for lay opinion, nor a matter for one whose experience was not that of a physician but rather that of a lay administrator of a hospital who also had some experience with drugs as a result of having operated a drug store.

■ It is the general rule that the qualification of one presented as an expert witness on a given subject is a matter resting primarily in the sound discretion of the trial court, and its decision thereon is not to be set aside in the absence of showing an abuse of discretion. Christian v. Jeter, Mo. Sup., 287 S.W.2d 768; Yocum v. Kansas City Public Service Co., Mo.Sup., 349 S.W.

2d 860. However, where, as here, the record clearly discloses the witness was not an expert in the matters on which he endeavored to testify as an expert, the appellate court is constrained to rule and we do rule that the trial court abused its discretion and erred in permitting the testimony over proper objection.

Appellant's other contentions of error concern the trial court's giving over its objection Instruction No. 2 and Instruction No. 3 as amended by the court, and the refusal of the trial court to give Instruction No. 3 as submitted by appellant. However, the briefs filed cover these contentions of error well and they are of such a nature that on retrial they should not again arise. It would serve no useful purpose to discuss them in this opinion.

We note one basic problem inherent in the instructions which should be discussed in view of the necessity of remanding this cause for a new trial on the cross claim of Wiley against Blue Cross. That problem involves the proper allocation of Wiley's hospital expenses. It is clear that those hospitalization expenses occasioned solely by Wiley's back injury and its treatment are outside the Blue Cross policy coverage for they fall within the "Benefits not provided for" clause. They are admittedly expenses of hospitalization for an "injury arising out of and of and in the course of employement." Cf. Moeller v. Associated Hospital Service, 304 N.Y. 73, 106 N.E.2d 16; Cash v. America Health Insurance Corporation, 203 Va. 719, 127 S.E.2d 119.

But what of those expenses, such as the hospital room and board charge of $15.50 per day, and the cost of certain drugs, treatments, etc., which were occasioned to some degree by *both* his back injury and his genito-urinary illness. For example, who is responsible for the hospital room and board daily charges during those days when to some degree he was being examined, or treated, or being cared for or observed for both his back injury and his genito-urinary illness. Are they to be pro-rated, or to be paid entirely by Blue Cross or by Wiley? Are they to be allocated according to whether they were occasioned primarily by the back injury and its treatment or merely were incidentally beneficial to that injury?

Neither appellant nor respondent has cited any case touching this question which inescapably will be presented on retrial of this case. It is apparently a question of first impression in this state and elsewhere. While we have not found any case specifically ruling it, the thrust of our answer is established in Hall v. Spot Martin, Mo. Sup., 304 S.W.2d 844. There claimant was injured (herniated disc) in the course of his employment and hospitalized therefor. While in the hospital it was discovered he also had cancer of the prostate. The Supreme Court stated, "The dispute herein relates to items for hospital, surgical and medical services rendered in an effort to make Mr. Hall more comfortable and to relieve him from pain. As we have heretofore stated, there is substantial evidence to the effect that the pain from which Hall suffered was caused both by the disc injury and by the cancer. The Commission found that Pacific 'is liable to this employee * * * for all the medical and hospital expenses incurred by employee to cure and relieve him of his disability relating to his back * * *.' It is evident that in ordering the payment of the instant expenses the Commission had the view that such services were necessary in order to relieve the employee from pain resulting from the injury and disability to his back, and the fact that such services may have also given relief from the pain caused by the cancer would not relieve Pacific from liability therefor. No case has been cited which deals with a situation of that kind and we have not found any. However, after reviewing the evidence, the findings of the Commission, and the provisions of the statute heretofore cited, we have concluded that we cannot say that the instant finding was against the overwhelming weight of the evidence, or that the Commission acted in excess of its powers in directing the payment of the disputed items."

The insurance policy in the case before us was issued by Group Hospital

Service, Inc., commonly known as Blue Cross and Blue Shield. Its contracts are to be construed in the same general manner as insurance policies issued by any commercial insurer. Annotation, Blue Cross-Blue Shield—Coverage, 81 A.L.R.2d 928; Slomovic v. Tennessee Hospital Service Asso., 203 Tenn. 380, 313 S.W.2d 265. Insurance policies, like other contracts, receive reasonable interpretations, and in construing the terms of a policy the court discharges its full duty when it ascertains and gives effect to the intention of the parties as disclosed by their contract. Lynch v. National Life & Accident Ins. Co., Mo. App., 278 S.W.2d 32.

The Blue Cross policy admittedly covered Wiley's mentioned hospital expenses unless they fell within the quoted exception of "Benefits not Provided For." It is the general rule that if the insurer pleads an exception to the general liability clause of the insurance policy it is deemed thereby to have set up an affirmative defense and assumes and has the duty of proving it. Gennari v. Prudential Insurance Company of America, Mo.Sup., 335 S.W.2d 55(4); Smith v. Industrial Hospital Assoc., 194 Or. 525, 242 P.2d 592; Wolf v. Washington Hospital Service Assoc., 52 Wash.2d 518, 326 P.2d 1015.

As we interpret the Blue Cross policy, in Article V it exempted from its general coverage only those hospitalization benefits or expenses occasioned solely by injury arising out of and in the course of employment. Thus, where the hospitalization benefits or expenses are not occasioned solely by an injury arising out of and in

the course of employment but are occasioned by a combination of such an injury and another injury, illness or disability not arising out of and in the course of the employment, the quoted exemption clause of Article V does not relieve Blue Cross of liability for such hospitalization benefits or expenses.

Our interpretation is in accordance with the usual rules of interpretation for insurance contracts.[2] Missouri cases are legion which hold that, if there is reasonable doubt, or uncertainty as to the meaning of the language used in a policy of insurance and it is fairly susceptible of interpretation in favor of the insured, such meaning will be adopted. This is because it is the intent expressed in the policy that is to control and if the policy is reasonably susceptible of two or more interpretations, that which will sustain the insured's claim must be adopted. Weinberg v. Globe Indemnity Co., Mo.App., 355 S.W.2d 341, 1. c. 347; Nationwide Mutual Ins. Co. v. Schilansky, D.C.Mun.App., 176 A.2d 786; Gage v. Connecticut General Life Ins. Co., Mo. App., 273 S.W.2d 761, 47 A.L.R.2d 1234. It is a general rule of law that a contract or a policy of insurance should be given a liberal construction so as to uphold it and accomplish the purpose or object for which it is made, rather than a strict technical construction which may defeat such purposes. Grafton v. McGuire, 362 Mo. 882, 245 S.W.2d 69, 44 C.J.S. Insurance § 297, page 1165; Davis v. Liberty Mutual Ins. Co., 8 Cir., 308 F.2d 709.

We do not perceive in the policy or in Article V thereof any intent to pro-

2. While in reaching our conclusions we have not considered defendant Wiley's Exhibit G, a printed explanation of the Blue Cross policy. We believe they are worth noting:
"You will be paid a weekly benefit—according to the Schedule on Pages 14 and 15 while you are disabled and prevented from working, provided that you are under the care of a doctor and your disability results from a non-occupational accident or disease. Benefits commence on the first day of an accident or the eighth day of illness and

are payable up to a maximum of 26 weeks for any one disability.
"If you are disabled as a result of an *occupational* accident or disease and the weekly rate of Workmen's Compensation payments to which you are entitled is less than the amount you would receive for a non-occupational disability under this Plan, the Plan will make up the difference for a period up to a maximum of 26 weeks.
"You need not be confined to your home to receive these benefits."

hibit possible overlapping coverages for hospitalization benefits for it is possible to be hospitalized for injury arising out of and in the course of employment and yet for such injury not to be covered by Workmen's Compensation benefits, as in the case of minor employers who have not accepted the benefits of the compensation act, or employments that for some other reason are not under the Workmen's Compensation Act. Even in the present case the testimony was that Mr. Wiley settled his Workmen's Compensation case in such a manner as not to include hospitalization expenses, a fact we deem to be immaterial. See, Annotation, Insurance-Workmen's Compensation, 27 A.L.R.2d 946.

Respondent Wiley has devoted a portion of her brief to the question of estoppel. However, defendant Wiley did not offer any instruction or take other appropriate action submitting that question and thereby abandoned it at the trial. Hence, such question is not now before us for review.

The judgment appealed from is reversed, and the cause is remanded for a new trial on the cross claim.

All concur.