BLANCHE, Judge.
Plaintiffs-appellants, Benny L. and Lula R. Craighead, appeal a judgment of the Nineteenth Judicial District Court which denied their claim under a group accidental death insurance policy issued by the de *555 fendant-appellee, The Equitable Life Assurance Society of the United States. At issue is a policy issued by the defendant to Seismograph Service Corporation covering the life of William M. Craighead. Although no beneficiary was designated under the policy, the proceeds are payable to the plaintiffs under the policy’s designation of preference beneficiaries.
The case was tried under a joint stipulation of facts, a summary of which follows.
William M. Craighead, age twenty-seven, was an employee of Lorac Service Corporation (a subsidiary of Seismograph Service Corporation of Tulsa, Oklahoma) at the time of his death on August 15, 1973, when he apparently fell overboard from the vessel on which he was employed (M/V Atlantic Seal) and was drowned some seventy-five miles west of Panama City, Florida, in the Gulf of Mexico. At the time of this accident, the vessel and crew were leased by Sealcraft, Inc., of Galveston, Texas, to Digicon, Inc., of Houston, Texas, and Digicon had contracted with Lorac for Lorac to supply navigation services in connection with seismographic operations carried on by Digicon in the Gulf of Mexico.
Mr. Craighead was the senior Lorac operator assigned to the vessel to maintain the vessel on the seismographic line which they were shooting at the time. His work duties were confined to the navigation room of the vessel, and he communicated via intercom with the officer on watch who made any changes in direction requested by the Lorac operator.
At the time of Mr. Craighead’s disappearance, the Lorac equipment was nonoperational, having broken down on approximately August 11 (four days prior to his disappearance). There were no parts on board with which to repair the Lorac equipment, so the vessel reverted to its on-board instruments. During this period since the Lorac equipment had become nonoperational, Mr. Craighead had stood no regular watches.
Mr. Craighead was last seen sitting on the rail of the main deck of the vessel at approximately 5 :20 A.M. on August 15. At noon when he did not appear for lunch, a search of the ship was made, and it was determined that Mr. Craighead had been lost overboard. A search of the area was made by the vessel and the Coast Guard to no avail.
During his employment with Lorac Service Corporation, Mr. Craighead was paid at a rate of $2.05 per hour, generally, for sixteen hours per day, seven days a week. He also ■ received free meals and lodging while on board the vessel. He was paid his wages even though at the time of his disappearance the Lorac equipment was nonoperational. While he was working, Mr. Craighead set his own hours and usually worked six hours on and six hours off or twelve hours on and twelve hours off. On August 14 and 15, one day before his death and the day of his death, respectively, he was paid for a total of nineteen hours each day even though the equipment was nonoperational at the time.
Mr. Craighead was insured by his employer under a group life insurance policy with the defendant which provided life insurance in the amount of $14,000 and nonoccupational accidental death benefits of $7,000. The insured’s parents, the plaintiffs herein, were paid $14,000 in life insurance benefits, but defendant has denied the claim for $7,000 in non-occupational accidental death benefits, claiming that the insured’s death arose from bodily injuries which were not non-occupational within the definition of the policy.
Under the heading ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS, the policy provides:
“Upon receipt of due proof that any employee, while insured under this policy, shall have sustained non-occupational bodily injuries caused directly and exclusively by external, violent and purely accidental means * * * the Society *556 will, subject to the limitations and provisions of this policy, pay [for life the principal sum].” (Record, p. 70)
Under LIMITATIONS, the policy provides :
“No payment shall be made under this policy for any loss resulting from or caused directly or indirectly, wholly or partly, by
* * * *
“(e) bodily injuries arising out of and in the course of the employee’s employment.” (Record, p. 70)
The trial judge granted summary judgment to the defendant, being of the opinion that there were no issues of fact in dispute and that the law was in favor of the mover. Plaintiffs’ motion for summary judgment was denied.
It appears that there are no real or genuine issues of material fact in dispute, and the only contested issue is a legal one, that is, whether the decedent’s death was occupational or non-occupational. Under limitation (e) quoted above, if the decedent was killed in an accident arising out of and in the course of his employment, the defendant is entitled to judgment as a matter of law and the judgment of the trial court must be affirmed. If, on the other hand, the decedent was not killed in an accident arising out of and in the course of his employment, the plaintiffs are entitled to the proceeds of the non-occupational accident policy and the judgment must be reversed.
Plaintiffs contend that the trial judge reached the wrong result by entirely relying upon workmen’s compensation law to ascertain the meaning of paragraph (e). We agree that the question is not to be determined by what has been decided in any particular workmen’s compensation case but is to be determined by whether or not recovery can be had under the terms of the policy and the facts of the injury. Nevertheless, such a decision would be persuasive if it construed almost identical language as contained in the instant policy. See First Pyramid Life Insurance Company of America v. Thornton, 467 S.W.2d 381 (Ark.Sup.Ct.1971); Carter v. Metropolitan Life Insurance Company, 47 Ga. App. 367, 170 S.E. 535 (1933).
Although paragraph (e) is not defined in the policy, we conclude, as did the trial court, that the phrase “arising out of and in the course of the employee’s employment” encompasses the activities of the deceased in the factual circumstances here presented. We reach this conclusion based upon our understanding of the common and usual significance of the words, Schwegmann Brothers Giant Supermarkets v. Underwriters at Lloyd’s London, 300 So.2d 865 (La.App. 4th Cir. 1974), writ denied, La., 303 So.2d 172.
The plaintiffs argue that since at the moment of the accident the decedent was not performing the job he was hired to do, he was, therefore, performing a non-occupational activity and accordingly they should recover under the policy.
This argument erroneously equates the phrase “arising out of and in the course of the employee’s employment” with physical activity only and overlooks the true nature of the job held by the decedent. Pursuant to Lorac’s contract with Digicon, Lorac hires radio operators to board Digicon’s ships and receive théir radio transmissions. While it is true that these operators are paid only for the periods of time they actually operate the radio, the nature of the work demands that they be on board Digi-con’s ship from the time it gets under way until it returns again to land.
Lorac, in order to insure the availability of its operators when they are required by Digicon, has no choice but to require those operators to board Digicon’s vessel as it leaves port and remain thereon until it returns. In effect, the round-trip presence of the operator is part and parcel of his employment contract with Lorac. There *557 fore, contrary to plaintiffs’ argument, the full course of his employment duties encompasses more than the mere operation of Lorac’s radio.
In return for his continued presence and availability and incidental to the contract between Lorac and Digicon, the operator receives his salary from Lorac and free meals and lodging during the entire trip.
The fact that the equipment failed is of no moment since obviously both employee and employer contemplated that in the event of such failure the employee would remain on board the vessel in response to Lorac’s obligations under the contract. The fact that decedent’s place of employment was at sea and the fact that he did remain on board the M/V Atlantic Seal for four days after the radio became nonoperational compels this conclusion.
From the circumstances presented, we think it is clear that the decedent drowned as a result of an accident which arose out of and occurred in the course of his employment within the meaning of the instant policy.
We are mindful that the issue presented herein is the interpretation of insurance policy language; however, similar results have been reached in other areas of the law when the same “arising out of and in the course of” language has been interpreted.
A seaman, because of similar inability to leave his ship during its voyage, is considered to be within the course of his employment for the purposes of the Jones Act, if injured while engaged in any activity incidental to and necessarily connected with his duties. It was determined in Sundberg v. Washington Fish and Oyster Company, 138 F.2d 801 (9th Cir. 1943), that an off-duty seaman’s mere presence on deck for the purpose of pointing out frolicking sea lions was held to fall within the course of his employment.
Similarly, an off-duty employee injured while being transported by her employer without charge from the place of work to the entrance to the plant, wherein the employees were not permitted to operate their own vehicles, was held to be within the exclusion of a similar group non-occupational health and accident insurance policy forcing her to seek her remedy under workmen’s compensation. In Morgan v. Equitable Life Assurance Society, 22 So.2d 595 (La.App. 2nd Cir. 1945), the Court, when faced with policy language very similar to that herein, said:
“ * * * The policy clearly contemplates that so long as an employee is in the discharge of the duties of his occupation or is engaged in some activity necessarily incidental thereto, in the furtherance of the employer’s business, the policy provisions would not apply. * * *” (22 So.2d at 598)
In Gage v. Connecticut General Life Insurance Company, 273 S.W.2d 761, 47 A.L.R.2d 1234 (Mo.App.1954), a Missouri Court of Appeals held that an off-duty injury sustained while on transportation furnished by an employer arose out of her employment, stating:
“ * * * [I]t was Mrs. Gage’s employment in Fairfax which directly caused her presence on the bus which was on the Intercity Viaduct at 7:15 A.M. on July 30, 1951; the trip was not only incidental to her job but indeed was necessary if she wanted to work. Such a transportation arrangement was beneficial to both the employee and the employer. Indeed is there any reason at all apart from her employment relationship which may account for her presence on this bus ? The admitted facts indicate *558 that there is none.” (273 S.W.2d at 764, 47 A.L.R.2d at 1238)
The Court also concluded that the accident happened in the course of the employment, stating:
“ * * * The phrase [“in the course of”] invariably goes hand in hand with ‘out of’ and likewise has acquired an early and distinctive usage. In general, this refers to a time within the employee’s regular period of employment and at a likely place while engaged in matters which fairly may be said to be incidental to the employment relationship. Foster [Foster v. Aimes Farm Dairy Co., Mo., 263 S.W.2d 421] and Conyers [Conyers v. Krey Packing Co., Mo.App., 194 S.W.2d 749] cases, supra. Here the plaintiff’s use of the bus was obviously incidental to her TWA job when we recall that at that time the published departure and arrival schedule (Joint Exhibit'4) was the only way in which Greater Kansas City, Missouri, residents could get to the TWA Overhaul Base at Fairfax, Kansas.” (273 S.W.2d at 764, 47 A.L.R.2d at 1238)
Although we recognize that individually each of the cited cases is not controlling in the instant suit, we note that all of the factors utilized by those courts are present herein.
We have herein the inability to leave the place of employment as in Sundberg, the furtherance of the business objectives of the employer as in Morgan, and the necessity of being at the place where the accident occurred as in Gage.
For the foregoing reasons, the judgment of the trial court is affirmed, at appellants’ costs.
Affirmed.