AUTOMOBILE CLUB INTER–INSUR-ANCE EXCHANGE, Plaintiff-Re-spondent,

v.

David BEVEL and Mark Oberreither, Defendants-Appellants.

No. 64922.

Supreme Court of Missouri,
En Banc.

Jan. 17, 1984.
Rehearing Denied Feb. 15, 1984.

Donald L. Schlapprizzi, St. Louis, Terrence F. Moffitt, St. Louis, for defendants-appellants.

Ben Ely, Jr., John G. Enright, St. Louis, for plaintiff-respondent.

PER CURIAM.

This is a proceeding for declaratory judgment brought by the Automobile Club Inter-Insurance Exchange seeking a determination as to whether its policy of insurance issued to the Automobile Club of Missouri afforded the Auto Club's employee, appellant Mark Oberreither, liability coverage in a suit brought by another employee, appellant David Bevel, for injuries sustained in an automobile accident involving a vehicle leased to Auto Club and driven by Oberreither. The insurance policy contained an exclusion exempting the Exchange from liability for injuries suffered by an employee of the Auto Club if the injuries arose in the course of employment. The trial court found for plaintiff. Defendants appealed to the Eastern District where the judgment was reversed. We ordered the cause transferred and now review the trial court's decision as if on original appeal. Rule 83.03;

83.09. We likewise reverse and adopt the opinion by Pudlowski, J. which follows without quotation marks, as the opinion of the Court.

Respondent Automobile Club Inter-Insurance Exchange (Exchange) brought a declaratory judgment action seeking a determination that its policy of insurance with Automobile Club of Missouri (Auto Club) afforded the club's employee, appellant Mark Oberreither, no liability coverage in an action brought by another employee, appellant David Bevel, for injuries suffered in an automobile driven by Oberreither. The trial court found in favor of the Exchange, and both defendants appeal.

■ The trial court found that the fellow employee exclusion clause of the policy provided appellant Oberreither no coverage with respect to the injury claim brought by appellant Bevel. That clause exempts the Exchange from liability suffered by an employee of the Auto Club if such injury arises in the course of employment. The court found as a matter of law that Bevel's injuries arose in the course of employment and out of the use of an automobile leased by the Club and driven by Bevel's fellow employee, Oberreither. Because conclusions of law were stated, we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

The relevant facts are as follows. At the time and date of the accident, 6:37 p.m., March 17, 1980, Bevel and Oberreither were employed by the Automobile Club of Missouri as field representatives. Each was assigned a territory in which their duties included servicing and contracting with "contract" service stations to provide emergency road services for members of the Automobile Club of Missouri. In addition, Bevel was in charge of the equipment program for the Auto Club which included furnishing automotive equipment and clothing to these contract garages.

On the date in question, both Bevel and Oberreither had elected to perform "in-office" paper work at the Auto Club as opposed to field work. About noon, they both left work and traveled in an automobile leased by the Automobile Club for Oberreither's business and personal use. They made four stops during the afternoon and at the time of the accident, approximately 6:30 p.m., Oberreither was driving Bevel to his home with the intention of transporting Bevel to work the next day.

The determinative issue before us is whether Bevel's injuries, incurred in the accident on March 17, 1980, arose out of the course of Bevel's employment with the Automobile Club of Missouri.

The evidence revealed that having missed Oberreither's wife for lunch the two men had a beer at a tavern and then had a hamburger at a fast-food restaurant. They purchased a six-pack of beer and proceeded to Murphy's Garage. As a contract garage, Murphy's had been originally assigned to Oberreither, but was subsequently serviced by Bevel. They both testified that the purpose of the visit was to celebrate St. Patrick's Day with an Irishman as well as to inquire as to any complaints regarding business. While at Murphy's, Bevel called the home office and indicated that he and Oberreither would return to the home office in an hour.

After leaving Murphy's Garage where they had stayed over two hours, Bevel and Oberreither went on their own initiative to the First National Drink, a pub. The purposes of the visit were to have another refreshment and to introduce and acquaint Bevel to Jim Vallero, a friend of Oberreither and an automotive equipment supplier because Bevel handled the Auto Club's equipment program. Vallero and Bevel conversed briefly in general terms about the possibility of the Auto Club's purchasing some of Vallero's products, and shortly thereafter, Vallero departed after consuming only one beer. Both Bevel and Oberreither consumed a few more beers and, before departing the tavern, Oberreither graciously offered to take Bevel home and

fetch him in the morning for work. Shortly thereafter the accident occurred. Certainly a forceful argument could be made that Bevel and Oberreither's activities during the afternoon were not work related but the critical issue is whether at the time of the accident they were fellow employees.

The trial court found that respondent Exchange's policy of insurance with the Automobile Club of Missouri offered Oberreither no liability coverage for personal injuries suffered by Bevel as a result of the accident. The policy provided no coverage under its fellow employee exclusion clause because Bevel and Oberreither were fellow employees. The court also found that Bevel's injuries arose in the course of employment and in the business of the Automobile Club of Missouri. Appellants Bevel and Oberreither maintain that the trial court erred in finding that Bevel's injuries arose in the course of employment. Based on the evidence presented, we are unable to agree with the conclusion that the injuries arose in the course of employment and we reverse.

■ The standards used to determine whether an employee is within the course of his employment are the same as those used to determine eligibility for Workmen's Compensation benefits. *Gage v. Connecticut General Life,* 273 S.W.2d 761, 764 (Mo. App.1954). Whether an accident and consequent injuries arose out of or in the course of employment is a question of law. *Garrett v. Industrial Comm'n,* 600 S.W.2d 516, 519 (Mo.App.1980); *Hunt v. Allis-Chalmers Mfg. Co.,* 445 S.W.2d 400 (Mo.App.1969).

■ The general rule is that an injury "arises out of" the employment if it is a natural and reasonable incident thereof and it is "in the course of employment" if the accident occurs within the period of employment at a place where the employee may reasonably be fulfilling the duties of employment, *Garrett, supra* at 519; *Begey v. Parkhill Trucking Co.,* 546 S.W.2d 529 (Mo. App.1977).

The terms "arising out of" and "in the course of" employment are two separate tests, and both must be met before one is entitled to compensation. *Fingers v. Mount Tabor United Church of Christ,* 439 S.W.2d 241, 243 (Mo.App.1969).

■ Whether one is injured in the scope of employment depends upon the set of facts and circumstances surrounding the accident. In the first of this two-part test, this court held that an injury arises "out of" the employment when there is a causal connection between the nature of the employee's duties or conditions under which he is required to perform them and the resulting injury. *Kammeyer v. Board of Education,* 393 S.W.2d 122 (Mo.App.1965). Under the second part of the test, we held in *Griffin v. Doss,* 411 S.W.2d 649 (Mo.App. 1967), that "in the course of employment" refers to the time, place, and circumstances under which the injuries are received. *Id.* at 652. *See also* Larsen's, Workmen's Compensation Law, Vol. 1, § 14.00.

■ Generally, an employer is not liable for injuries incurred by an employee in traveling to and from work unless the employee's traveling is for the convenience of the employer. The *Garrett* court delineated three specific circumstances under which automobile use may be incident to employment: "(1) if the expense of the transportation has been assumed by employer, (2) the work of the employee was to continue at his destination, or (3) the employee was about the employer's business at the time of the accident." *Garrett, supra,* 600 S.W.2d 516, 520. In the case at hand, none of these categories applies.

■ Under the first test, Bevel's injuries did not arise "out of" the employment with the Auto Club because there was no causal connection between his duties and his injuries. Primarily, Bevel and Oberreither were not entitled to spend the entire afternoon out of the office during an "in-office" day. The general procedure was that they were allowed a lunch hour but not a full day of drinking and visiting purported business contacts. They clearly left the scope of employment when they did not return from the fast-food restaurant after

lunch. Although arguably their supervisor summarily approved their visit to Murphy's Garage, their failure to return in one hour as promised was material deviation from their employment.

Their continued journey to the First National Drink was not within the scope of the permissible duties on an "in-office" day. Their brief visit with Vallero was primarily social because Bevel and Vallero only conversed generally.[1] Bevel also had no authority to enter into any formal agreements or contracts with him at that time. Also, no apparent business reasons existed which required a visit to Murphy's or a meeting with Vallero on that day.

■ Bevel's injuries did not arise in the "course of employment" under the second part of the test. Primarily, Bevel and Oberreither deviated from company policy in failing to post an itinerary for making outside calls on customers. Secondly, their drinking activities were also not contemplated as business entertainment, particularly since no expense vouchers were submitted for reimbursement. *See* footnote. Thirdly, the accident took place at 6:37 p.m., well after normal business hours and they were obviously not "about the employer's business" at that time.

*Beckwith v. Standard Oil,* 281 S.W.2d 852 (Mo.1955) involved a co-employee driving another to his home. In *Beckwith,* the Missouri Supreme Court held that the employer, Standard Oil, was not liable when one of its employees was involved in an automobile collision while driving a fellow employee home from a company function. The driver employee was a traveling salesman for Standard who was given the use of the automobile for business purposes, but was authorized to drive it to and from work each day. The court held that he had "materially deviated" from the permitted route to his own home and did not act within the scope of employment while driving a fellow employee home. 281 S.W.2d 852, 855.

■ Oberreither also had no employment duty to transport Bevel to his home at the time of the accident. Under the principles of *Beckwith, supra* the test is whether the negligent act was committed in the prosecution of the business of the employer. 281 S.W.2d 852, 854 (1955). *See also Burks v. Leap,* 413 S.W.2d 258, 266 (Mo.1967); *DeMariano v. St. Louis Public Service Co.,* 340 S.W.2d 735, 740 (Mo.1960). On this afternoon, Bevel and Oberreither were on a frolic of their own celebrating the holiday, and not in the prosecution of business for the employer.

In *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625 (Mo.1969), our Supreme Court denied Workmen's Compensation benefits to the family of a traveling salesman killed in an auto accident after dropping off a social date. The court held that an employer is not liable because the employee had abandoned and stepped aside from his work duties to engage in personal pleasure. *Id.* at 628. The court articulated and reaffirmed the standard by which to measure an employee's non-work activities, "[t]he test of when a deviation begins or terminates is not so much a matter of time consumed and the distance traveled, but *rests primarily on whether the employer's purpose is being served." Id.* (emphasis added). In the case at hand, at the time of the accident the Auto Club's purpose was not being served by transporting Bevel home after six and one-half hours celebrating with Oberreither, activities which were contrary to the employer's directives for employees on an "in-office" work day. Bevel's injuries did not arise out of or in the course of employment with the Automobile Club of Missouri. Even if Bevel and Oberreither had legitimately engaged in work-related activities during their visits, driving Bevel home was not within the scope of employment because it did not further the employer's purpose. At the time of the accident, Bevel and Oberreither were no

1. As any good salesman knows, to be a successful salesman, one should "pick up the other salesmen's check." The evidence in this case is that Bevel and Vallero picked up his own tab.

This action should infer that it was not a business meeting but rather a get acquainted encounter as Bevel contends.

longer acting in their capacity as fellow employees and the automobile leased to Oberreither by the Auto Club was not an employer conveyance.

Therefore, we reverse and hold that the policy issued by appellee, [respondent] Automobile Club Inter-Insurance Exchange, to the Automobile Club of Missouri provides coverage for defendant-appellant Oberreither with respect to the bodily injury claim of defendant-appellant Bevel.

HIGGINS, GUNN and BILLINGS, JJ., concur.

RENDLEN, C.J., and WELLIVER and DONNELLY, JJ., concur in result.

BLACKMAR, J., concurs in result in separate opinion filed.

BLACKMAR, Judge, concurring in result.

The insurance policy in issue is the reciprocal of workers' compensation, for the simple reason that the employer would not want to provide an employee with both compensation benefits and responsive insurance coverage. As the per curiam notes, decisions in insurance cases of this kind are precedents in compensation cases. I believe that the per curiam goes to unnecessary lengths in reviewing the factual findings of the trial court, that in so doing it departs from the standards of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and that it may spawn confusion in the law of workers' compensation. Problems in the Court of Appeals opinion were instrumental in our decision to grant transfer. I cannot join in a disposition which perpetuates these problems.

The case can be decided, however, without detailed explanation of the business and non-business aspects of the visitations to Murphy's garage or First National Drink. Problems of mixing business and pleasure often arise under workers' compensation law, and involve factual determinations. I am not prepared to say that questions as to whether a delay in returning from one hour to two constituted a deviation from the course of employment, whether a visit to another customer or supplier was authorized, and what the significance of picking up the check is, should be ruled as matters of law, as the per curiam seems to do. The factual conclusions expressed in the per curiam appear to be at odds with the liberal construction of the workers' compensation law most recently mandated by *Wolfgeher v. Wagner Cartage Service, Inc.,* 646 S.W.2d 781 (Mo. banc 1983).

It seems clear from the record, however, that the luncheon trip was a purely personal mission. There is no indication that Bevel and Oberreither could not have dined wherever they chose, together or separately, or that a luncheon trip at some distance from the office had any relation to their employment. Inasmuch as business did not take Bevel away from the office, it is appropriate to hold that Oberreither's undertaking to drive him home likewise was not work related, and that the injury to Bevel did not arise out of or in the course of employment. We do not need to consider anything except the luncheon trip and the trip to Bevel's home following the session at First National Drink. The cases of *Beckwith v. Standard Oil Co.,* 281 S.W.2d 852 (Mo.1955); *Miller v. Sleight & Hellmuth Ink Co.,* 436 S.W.2d 625 (Mo.1969); and *Garrett v. Industrial Commission,* 600 S.W.2d 516 (Mo.App.1980) are in line with the views I express.

I would reject the respondent's plea for a rule of automatic workers' compensation coverage if an employee is operating or riding in a "company car" at the time of his injury.

I agree that the circuit court erred in denying coverage and join in the reversal.