John FORD, Respondent,

v.

**BI–STATE DEVELOPMENT
AGENCY, Appellant.**

No. 47830.

Missouri Court of Appeals,
Eastern District,
Division Four.

August 8, 1984.

Frank J. Lahey, Jr., St. Louis, for appellant.

Herbert D. Schaeffer, Thomas Taylor, Clayton, for respondent.

GAERTNER, Presiding Judge.

John Ford, the claimant in this Worker's Compensation case, was employed by Bi-State Development Agency (employer) as a bus driver. Claimant was injured on February 12, 1982, when, after discharging his last passenger during his bus run, he stopped to use the restroom and obtain a cup of coffee at a nearby MacDonald's Restaurant where he slipped upon entering. The Labor and Industrial Relations Commission affirmed the award of compensation made by the administrative law judge. Bi-State has perfected its appeal directly to this court. § 287.495, RSMo 1980. We affirm.

■ "We begin our analysis with an acknowledgement of our standard of review of a workers' compensation claim: It is a review of 'the whole record in the light most favorable to the decision, deferring to the Industrial Commission when it resolves issues concerning the credibility and weight to be given to conflicting evidence and to affirm when the decision is supported by competent and substantial evidence.'" *Hagan v. Paris & Osbourne Chevrolet,* 667 S.W.2d 1, 2 (Mo.App.1984), quoting *Gold v. Sharp, Kidde, Webb,* 564 S.W.2d 612, 614–15 (Mo.App.1978). "Appellate review of a decision of the Commission is limited to a determination of whether the award is supported by competent and substantial evidence on the record as a

whole." *Sample v. Monsanto Chemical Co.,* 664 S.W.2d 625, 626[1] (Mo.App.1984).

■ The first issue on appeal is whether claimant's accident arose out of and in the course and scope of his employment. This is a question of law. *Automobile Club Inter-Insurance Exchange v. Bevel,* 663 S.W.2d 242, 245 (Mo.Banc 1984). "The general rule is that an injury is one that 'arises out of' the employment if it is a natural and reasonable incident thereof and it is 'in the course of employment' if the accident occurs within a period of employment *at a place* where the employee *may reasonably be fulfilling* the duties of employment." *Id.* (emphasis added). "The terms 'arising out of' and 'in the course of' employment are two separate tests, and both must be met before one is entitled to compensation." *Id.*

In the first of this two-part test, an injury arises "out of" the employment when there is a causal connection between the nature of the employee's duties or conditions under which he is required to perform them and the resulting injury. *Id.* No challenge to claimant's recovery under the first part of this test is made. Claimant's injuries "arose out of" his employment with Bi-State because there was a causal connection between his duties and his injuries. It was during his employment on his daily morning run that his injury occurred.

■ Bi-State attacks the propriety of the Commission's award to claimant based on claimant's failure to satisfy the second prong of the test by proving the accident occurred while he was "in the course of employment." Under the second part of the two-part test, "in the course of employment" refers to the time, place, and circumstances under which the injuries are received. *Id. See also* 1 A. Larson, Workmen's Compensation Law, § 14.00 (1982). "An injury to an employee arises 'in the course of' his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto." *Goetz v.*

*J.D. Carson Co.*, 357 Mo. 125, 206 S.W.2d 530, 534 (1947). *See Yaffe v. St. Louis Children's Hospital*, 648 S.W.2d 549, 551 (Mo.App.1982). Employees who, within the time and space limits of their employment engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment. 1A Larson, *supra,* § 21.00, p. 5–4. "Accidents occurring while an employee is on his way to or from toilet facilities, or while he is engaged in relieving himself, arise within the course of employment, subject only to the possible question of reasonableness of the means or place chosen." *Id.* at § 21.53, p. 5–34. A pause by an employee within the reasonable limits of time and place to satisfy the needs of the body for food or drink, or even for refreshment, may well be considered as reasonably incidental to his work. *Goetz,* 206 S.W.2d at 534.

■ The method utilized and the facility selected by claimant were not unreasonable or so removed from approved practice as to be either a substantial deviation or an extraordinary action precluding his recovery. Although employer had provided facilities about two blocks from where claimant stopped, no unreasonableness appears in claimant's selection of improvised facilities. He did not deviate from his usual bus line route to effect his goal. Claimant's bus had no passengers on it when he stopped. The commission adopted administrative law judge's decision *in toto,* including his finding that claimant "chose the ideal time to answer a call of nature and obtain refreshments for his up and coming break." Had claimant used the facilities employer says he should have, claimant "would have had to leave his bus unattended for a greater length of time and be totally out of sight of the bus for a greater length of time."

While the use of a prohibited method of seeking personal comforts may be fatal in some instances, *see* 1A A. Larson, *supra,* § 21.82, p. 5–60 to 5–63, no evidence exists that employer strictly prohibited the employees from the use of any other accommodations. To the contrary, the employees apparently were permitted to use unspecified facilities in emergencies. We conclude that claimant's excursus to MacDonald's was reasonably incidental to his work and we uphold the Commission's finding that the accident with its consequent injuries arose out of and in the course of employment.

■ Employer's second point asserts claimant failed to give notice of injury to his employer as provided by § 287.420, RSMo 1978. Although § 287.420 requires that the employer receive written notice of an injury, the section excuses that requirement when the employer was not prejudiced by the failure to receive the notice. *DeRousse v. PPG Industries, Inc.,* 598 S.W.2d 106, 112 n. 7 (Mo. banc 1980). After the accident on February 12, 1982, claimant finished his route and returned to the garage where he informed his union representative that he had fallen and was going to the hospital. The union representative in turn relayed the information to the only company person there, either the superintendent or the dispatcher. A fellow employee of claimant's also informed the Bi-State division superintendent that claimant had fallen at MacDonald's during the morning of claimant's bus run, that claimant had been injured and that claimant would not be in for his afternoon run. Several weeks after the accident, claimant told his supervisor that he had slipped and fallen at MacDonald's when he had stopped to use the restroom and get coffee. Claimant did not submit a written report of injury to his employer until June 2, 1982.

■ Notice of a potentially compensable injury acquired by a supervisory employee is imputed to the employer. Knowledge of a potentially compensable injury makes a prima facie showing that the employer was not prejudiced by the failure to receive timely written notice and shifts to the employer the burden of proving the contrary. *Malcom v. LA-Z-Boy Midwest*

*Chair Co.,* 618 S.W.2d 725, 727–28 (Mo. App.1981). Employer presented no evidence of prejudice from claimant's delay to give timely written notice. The finding of the Commission here that claimant gave actual notice to the employer within 30 days of the injury, although no written report was submitted until June 2, 1982, is proper.

Employer's final point attacks the admission into evidence over its objection of the deposition of one of the claimant's physicians on two grounds: 1) the medical report of the physician was not furnished to the employer within the time required by § 287.210.3 RSMo Supp.1982; and 2) no showing was made that the doctor was unavailable to personally appear and testify. Employer states that without the evidence of doctor's deposition, claimant fails to establish causation to support the award of compensation benefits. Section 287.-210.3 requires "the exchange of medical reports shall be made at least seven days before the date set for hearing." The uncontroverted record shows the physician's medical report was furnished to the employer on November 9, 1982, 6 days prior to the taking of doctor's deposition on November 15, 1982. The hearing was held November 23, 1982, two weeks after the employer had received the medical report. Employer argues that the "seven day rule" is intended to give an adversary notice of proposed medical testimony in sufficient time to prepare for confrontation upon disputed issues. Therefore, employee contends the seven day period should date back from the date of a deposition intended for use at a hearing rather than the date of the hearing itself. Under the circumstances of this case we need not decide the correctness of this application of the statute. Failure to comply with the rule is grounds for a continuance. Employer did not seek a continuance of the deposition, taken by agreement upon a mutually convenient date, nor of the hearing when the deposition was offered in evidence. Rather, the record reflects that the only relief sought by employer was total exclusion of the deposition. Relying upon Rule 57.07(c), employer argues that his failure to object at the time of the deposition should "not prejudice his right to make such objections at trial." However, Rule 57.07(d) excludes from the non-waiver rule objections based upon grounds which "might have been obviated or removed" if timely presented. This case obviously falls within the exclusion. Section 287.210.3 may not be used to nullify the preservation of medical testimony at a pre-hearing deposition by asserting non-compliance with the statute for the first time when the deposition is offered into evidence.

Employer's second reason contesting the admission into evidence of the doctor's deposition is claimant's failure to establish that the physician was unavailable to personally appear and testify at the date of trial. Section 287.560, RSMo Supp.1982 provides for the taking and use of depositions in Workers' Compensation proceedings "in like manner as in civil cases in the circuit court." Rule 57.07 controls the use of depositions in court proceedings, and, by virtue of Section 287.560, controls in like manner their use in Workers' Compensation proceedings. *Tillman v. Wedge Mobile Service Station,* 565 S.W.2d 653, 656 (Mo.App.1978). The burden to show the admissibility of a deposition is on the party offering it. *Id.*

No evidence of the doctor's unavailability is shown. The record does not indicate that the doctor was engaged in the discharge of his duties on the day that his deposition was offered to the court. *Null v. Gray,* 534 S.W.2d 823, 826 (Mo.App. 1976). Nor can we permit the deposition's admission on other grounds, such as residence of the witness, where the record reflects only the doctor's business office and not his residence. *Pike v. Pike,* 609 S.W.2d 397, 403 (Mo. banc 1980). The doctor's deposition was improperly admitted.

Notwithstanding the improperly admitted doctor's deposition, substantial competent evidence supports the commission's award. The commission is not solely

dependent upon medical evidence; its finding is to be made from the whole evidence. *Davis v. Brezner*, 380 S.W.2d 523, 528 (Mo. App.1964). The testimony of the claimant or other lay witnesses as to facts within the realm of lay understanding can constitute substantial evidence of the nature, cause, and extent of the disability, especially when taken in connection with, or where supported by, some medical evidence. *Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886, 892 (Mo.App.1975). The commission is authorized to base its findings and award solely on the testimony of a claimant; his testimony alone, if believed, constitutes substantial evidence to establish that he sustained an injury arising by accident. *Chilton v. General Motors Parts Division*, 643 S.W.2d 304, 306 (Mo. App.1982); *Smith v. Terminal Transfer Co.*, 372 S.W.2d 659, 665 (Mo.App.1963).

In *Smith*, the medical expert witness's uncertainty as to the strain necessary to produce a herniated disc injury did not defeat the board's finding that the injury occurred when the claimant slipped while bending and lifting a sugar sack. The claimant's own testimony supported the logical conclusion that his accident caused the injuries. Thus, valid awards need not always be accompanied by a definite medical diagnosis. When appropriate, awards may be made when medical evidence on these matters is inconclusive, as in *Smith*. In *Smith*, the court quoted extensively from Larson in his treatise on Workmens' Compensation Law, Sec. 79, p. 287, saying:

> In line with the general tendency of administrative law to recognize the expertise of specialized tribunals, compensation boards may rely to a considerable extent on their own knowledge and experience in uncomplicated medical matters, and in such cases awards may be upheld without medical testimony or even in defiance of the only medical testimony.

*Id.* at 666.

■ Apart from the deposition of Doctor Londe, there was substantial competent evidence to support the commission's award in the case at bar. It is not disputed that claimant suffered an accident on the morning of February 12, 1982, when he slipped on the ice outside the MacDonalds Restaurant. He suffered immediate pain rendering him unable to continue his employment that afternoon. He reported his accident and injury to his union representative upon completing his morning shift. He went to the hospital that day for emergency treatment, and was admitted to the hospital the following day. Claimant was unable to return to work following the accident until August 1982. There is no evidence of claimant having suffered prior injuries to his hip, back, arm, or wrist. On February 12, 1982, claimant's emergency room records at Alexian Brothers Hospital indicate in the initial findings "low back strain." On February 13, 1983 Bethesda General Hospital records reflect "multiple muscle strain" and "I am not sure whether he [claimant] has acute disc herniation." On February 24, 1982, St. Anthony's Hospital records indicate "probable herniated disc" The history recorded in all these admission notes relates the onset of complaints to the fall on February 12, 1982. No medical evidence by the employer contradicts the employee's testimony nor is this a case of conflicting medical testimony. Hence, the erroneous admission of the deposition does not warrant setting aside the award. *Tillman*, 565 S.W.2d at 657. It is elementary that the question of causal connection is to be decided in the light of the particular facts and circumstances of each case. Accordingly, we hold that the findings and award of the commission are supported by competent and substantial evidence and are not contrary to the law or overwhelmingly against the weight of the evidence.

The judgment of the Industrial Commission is affirmed.

SMITH and STEPHAN, JJ., concur.