**Lola SHINN, Claimant–Appellant,**

v.

**GENERAL BINDING CORPORATION, KOELLING METALS DIVISION, Employer–Respondent.**

No. 57157.

Missouri Court of Appeals,
Eastern District,
Division One.

May 9, 1990.

Gerald K. Rabushka, St. Louis, for claimant-appellant.

Gilbert D. Connor, St. Louis, for employer-respondent.

REINHARD, Judge.

Claimant appeals from a final order of the Labor and Industrial Relations Commission (Commission) denying her claim for compensation on the basis that she was not in the course of employment at the time of her injury. We reverse.

The facts are not in dispute. Claimant was employed as a bookkeeper. She was responsible for preparing the payroll, and on Tuesdays, which were paydays, she would deposit a check into employer's payroll account at a local bank. The check was drawn on employer's "main" account at a Chicago bank; in order for the check to be posted as of Tuesday, the local bank required that it be deposited before 2:00 p.m. The trip to the bank took approximately one-half hour. Claimant used her own automobile, leaving employer's office at approximately 1:30 p.m.

Employer gave claimant an unpaid lunch period of one-half hour. Normally, claimant would take her lunch at 12:00 p.m. or 12:30 p.m. On Tuesdays, however, claimant would combine her lunch period with the trip to the bank. This was done at the office manager's request so as to prevent claimant from having to make two separate trips. Claimant was paid for the half-hour trip to the bank but not for her lunch period. She was required at the end of the combined trip to return to the office with the deposit slip and file it away in an envelope.

On May 20, 1986, a Tuesday, claimant left employer's office at approximately 1:30 p.m. She made the deposit and obtained a receipt. Before returning, she stopped at a restaurant between three and four blocks from the office. As she was standing up after her meal, she slipped on a wet floor, injuring her hip and back. She returned to work with the deposit slip. She also worked on Wednesday of that week, but was unable, due to her injury, to work Thursday or Friday. She sought medical treatment over the weekend. The examination revealed that the fall either caused or aggravated a spondyloisthesis, a forward displacement at L–5 on the sacrum, and a defect in the pars inarticularis.

In her claim for compensation, claimant sought payments for permanent partial disability, temporary total disability and medical treatment. Employer's answer consisted of a general denial. After a hearing, the administrative law judge (ALJ) found that claimant was injured in the course of employment and concluded that claimant suffered a permanent partial disability of 15% of the body as a whole. The ALJ awarded 60 weeks of disability compensation at $150.33 per week, temporary total disability compensation of $151.54, and medical expenses of $722.20.

Employer appealed to the Commission, arguing that the ALJ erred in concluding claimant was in the course of employment when she was injured. The Commission agreed and entered its final order denying compensation. One Commissioner dissented.

In her sole point on appeal, claimant challenges the Commission's finding on the course of employment issue. Because the facts are not in dispute, our review is not limited to determining whether the Commission's finding is supported by substantial and competent evidence. "[D]ecisions of the Commission which are reached by interpretation or application of law, as distinguished from the facts, fall within the province of this court's review and correction." *Smith v. Hussmann Refrigerator Co.*, 658 S.W.2d 948, 949 (Mo.App.1983). The question presented, therefore, is whether the Commission correctly applied the law in finding that claimant was outside the scope of employment. We think not.

To be compensible under the Workers' Compensation Law, an injury must arise out of and in the course of employment. § 287.120, RSMo 1986. "Arising out of" means that a causal connection exists between the employee's duties and the injury. *Auto Club Inter–Insurance Exchange v.*

*Bevel*, 663 S.W.2d 242, 245 (Mo. banc 1984). "In the course of employment" refers to the time, place and circumstances of the injury. *Id.*

■■■ Generally, an injury is said to arise out of the employment if it is a natural and reasonable incident thereof; to be in the course of employment, an injury must occur within the period of employment at a place where the employee reasonably may be fulfilling the duties of employment. *Id.*, 1 Larson's Workmen's Compensation Law § 14.00 (1989).

■■■ Within this general framework, more specific rules have been delineated. A "going and coming" rule insulates the employer from liability for injuries sustained by employees travelling to and from work. *Id.* The going and coming rule encompasses a "lunch-time" rule: an employee with a fixed time and place of work is outside the scope of employment during an uncompensated, off-premises lunch break. *Daniels v. Krey Packing Co.*, 346 S.W.2d 78, 83 (Mo.1961); *Larson's, supra* §§ 15.51, 15.52. Finally, an exception to this latter rule applies when the employee performs a special task, service or errand in connection with the employment, *Daniels*, 346 S.W.2d at 83–84, or when the lunch is "undertaken under special circumstances to suit the employer's convenience." Larson's at § 15.52. This exception was explained in *Gingell v. Walters Contracting Corporation*, 303 S.W.2d 683 (Mo.App.1957):

> As we understand this formula, it is not necessary that, on failure of the personal motive, the business trip would have been taken anyway *by this particular employee at this particular time.* It is enough that some one would have had to make the trip to carry out the business mission. If the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with the employee's personal trip, it would be a *concurrent cause* of the trip, rather than an incidental appendage or afterthought. There is no occasion to weigh the busi-

ness and personal motive to determine which is *dominant.*

> . . . .

> We think this same formula is applicable when an employee, in the course of his normal journey to and from work, performs some *concurrent service* for his employer, and becomes an exception to the general rule excluding off-premises going-and-coming journeys—such as going from his home to his place of employment or returning therefrom to his home. The question then becomes: Was the mission of such a character or importance that it would have necessitated a trip by someone if this employee had not been able or willing to handle it in combination with his homeward journey?

*Gingell*, 303 S.W.2d at 688–89 (emphasis in original).

In *Gingell*, the employer requested that the employee perform two tasks while on a personal trip away from a construction site: purchase some tarpaulins to protect welding equipment and drop off some baggage at an airport. The employee took a different route home in order to get to the airport, and was injured while on the journey. The court held that the employee was in the scope of employment because even had his personal trip been cancelled, the business tasks would have had to be completed. *Id.* at 689.

More in point is *Cowick v. Gibbs Beauty Supplies*, 430 S.W.2d 626 (Mo.App.1968). The employee, a deliveryman, died of a heart attack following an automobile accident which occurred on his way home for lunch. The employee drove his own automobile, and during his lunch period he intended to pick up packages from home for delivery that afternoon. The employee's manager testified that he eventually picked up the packages himself. The court, citing *Gingell* and *Daniels*, held that because the employee's trip home for lunch was combined with a concurrent business service which someone, if not the employee, would have had to accomplish, the employee was in the course of employment when he died. *Cowick*, 430 S.W.2d at 629–30.

Applying the law announced in the foregoing cases, it is apparent that claimant in this case was in the course of employment when she was injured. Her trip included both a business and a personal motive. The two were combined at employer's insistence and for its convenience. Most significantly, the deposit of the payroll check was a task that would have had to be completed by someone, even had claimant not been able to accomplish it.

Employer argues that the injury is not compensible because at the time of injury claimant had completed the business part of the journey and was serving only a personal motive. We do not think this characterization is factually accurate. The evidence reveals that part of claimant's responsibility included returning the deposit slip to the office and filing it away. This was to be done at the end of the combined trip. Thus, at the time of injury, employee had not in reality completed the business task. More importantly, however, the law does not make the temporal distinction employer suggests. The question is not when the injury occurred. Rather, when an employee is on a trip which combines both a personal and business motive, the question is whether, upon failure of the personal motive, the business task would still have to be completed. Because the facts in this case support an affirmative answer to the question, we conclude claimant's injury is compensible. We find additional support for our conclusion in the following cases: *Locke v. Steele County*, 223 Minn. 464, 27 N.W.2d 285 (1947) (employee injured while on a lunch break combined with a trip to the post office); *McCammon v. Neubert*, 651 S.W.2d 702 (Tenn.1983) (employee injured on a trip away from employer's premises to obtain lunch for fellow employees). *See also Osborne v. Tucker Nursing Home*, 657 P.2d 666 (Okla.App.1982).

Reversed and remanded for further proceedings consistent with this opinion.

GARY M. GAERTNER, P.J., and CRIST, J., concur.