**Beverly Kay PARSONS, Claimant–Employee–Appellant,**

v.

**KAY'S HOME COOKING, INC., d/b/a Kay's Restaurant, Employer–Respondent.**

No. 17598.

Missouri Court of Appeals, Southern District, Division Two.

June 2, 1992.

James C. Wirken, James W. Jeans, and Cindy Sesler Ballard, Wirken & King, Kansas City, and Thomas E. Loraine, Lake Ozark, for claimant-employee-appellant.

Raymond E. Whiteaker and Janis L. Prewitt, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for employer-respondent.

MAUS, Judge.

Claimant, Beverly Kay Parsons (Parsons), was injured in an automobile accident after leaving her place of employment to go to a bank. The Administrative Law Judge (ALJ) found the accident was not compensable because Parsons had deviated from the route to the bank to attend to a personal matter. The Labor & Industrial Relations Commission (Commission) affirmed the decision of the ALJ. Parsons appeals. By an opinion filed December 26, 1991, this court affirmed the Labor and Industrial Relations Commission. Thereafter, on February 25, 1992, the application of claimant to transfer the case to the Supreme Court was sustained. On May 22, 1992, the Supreme Court ordered the case retransferred to the Missouri Court of Appeals, Southern District. With the alteration of this initial paragraph, the original opinion of this court is readopted. The following is a summary of the relevant facts.

Kay's Home Cooking, Inc. was owned by Parsons and her husband. The corporation conducted a restaurant business. Parsons managed the business. She worked 11–12 hours per day. She worked as a cook and did all other work necessary for the operation of the restaurant. The Parsons' home was under the restaurant.

On the morning of February 2, 1989, Parsons placed in a bank bag an amount of money that she wished to convert into change for the operation of the restaurant business for the weekend. The restaurant was located on U.S. Highway 54 in Osage Beach. Lake of the Ozarks General Hospi-

tal is located on U.S. Highway 54 west of the restaurant. The bank was located on U.S. Highway 54 approximately one mile east of the restaurant. When Parsons left the restaurant, she drove west to her physician's office near the hospital for the purpose of picking up a medical test kit for her personal use. After obtaining the kit, she drove east on U.S. Highway 54 toward the restaurant and the bank. She was involved in an automobile accident west of the restaurant. She was injured as a result of that accident.

The liability of an employer for the payment of workers' compensation is, of course, statutory. The basic liability of an employer is created by the following section.

> "Every employer ... shall be liable, irrespective of negligence, to furnish compensation ... for personal injury or death of the employee *by accident arising out of and in the course of his employment....*" § 287.120.1. (Emphasis added.)

Appropriate guidelines for the construction and application of the emphasized phrase have been expressed in the following terms.

> "The general rule is that an injury 'arises out of' the employment if it is a natural and reasonable incident thereof and it is 'in the course of employment' if the accident occurs within the period of employment at a place where the employee may reasonably be fulfilling the duties of employment, *Garrett [v. Industrial Comm'n,* 600 S.W.2d 516 (Mo.App. 1980) ], *supra* at 519; *Begey v. Parkhill Trucking Co.,* 546 S.W.2d 529 (Mo.App. 1977).
>
> The terms 'arising out of' and 'in the course of' employment are two separate tests, and both must be met before one is entitled to compensation. *Fingers v. Mount Tabor United Church of Christ,* 439 S.W.2d 241, 243 (Mo.App.1969)." *Automobile Club Inter–Insurance Exchange v. Bevel,* 663 S.W.2d 242, 245 (Mo. banc 1984).

It is Parsons' basic point that

"[t]he Commission erred in failing to apply the 'dual purpose doctrine' to the facts of this case because it is undisputed that Ms. Parsons would have embarked upon the business-related errand even if her private mission had been canceled." She states "[t]he issue here is not where Ms. Parsons' accident occurred, but whether the trip to the bank would have been made had she not gone to pick up the test kit. The answer is undisputed and unequivocally affirmative."

■ Parsons overlooks the following inherent limitation upon the application of the so-called "dual-purpose" doctrine.

> "Under the 'dual purpose' doctrine, injuries sustained by an employee during a trip to or from work are compensable where the primary purpose of the trip was in furtherance of the employer's business even though at the same time the employee was serving some purpose of his or her own." *Williams v. Transpo International, Inc.,* 752 S.W.2d 501, 505 (Mo.App.1988).

It is fundamental that for an accident to be compensable under the dual-purpose doctrine, an employee must be acting not only for his own purpose but for the purpose of his employer when the accident occurs. The doctrine does not apply when an employee deviates from an employer's business so that at the time of the accident he is serving only his own purpose. This precept was expressly stated at an early date.

> "It is the law that where the servant deviates from the scope of his employment for his own purposes, he is still upon his own trip, even though engaged in returning to his employment, until he has returned either to the point of his departure from the path of duty, or to a point where, in the performance of his duty, he is required to be. (Citations omitted)." *Kinkead v. Management & Engineering Corp.,* 103 S.W.2d 545, 547 (Mo.App.1937).

This precept is recognized in *Williams v. Transpo International, Inc.,* supra; *Beem v. H.D. Lee Mercantile Co.,* 337 Mo. 114, 85 S.W.2d 441 (1935); *McMain v. J.J. Connor & Sons Const. Co.,* 337 Mo. 40, 85 S.W.2d

43 (1935); *Swillum v. Empire Gas Transport, Inc.*, 698 S.W.2d 921 (Mo.App.1985).

The same precept is applicable in determining if an employee is within the course of his employment within the meaning of an insurance policy.

"The standards used to determine whether an employee is within the course of his employment are the same as those used to determine eligibility for Workmen's Compensation benefits." *Automobile Club Inter–Insurance Exchange v. Bevel*, 663 S.W.2d at 245.

Also, the same precept applies in determining if a servant has been acting within the scope of his employment so as to render the master liable for the servant's negligent action. *Howes v. Stark Bros. Nurseries & Orchards Co.*, 223 Mo.App. 793, 22 S.W.2d 839 (1930).

"Where at the time of an accident the servant or agent deviates or departs from the usual or most direct route which he would ordinarily follow in using the car on the owner's business, and goes off on some errand or for some purpose wholly his own, the owner is not liable for injuries inflicted by the servant or agent. But if at [the] time of accident the servant or agent has resumed the owner's business and has returned to the point of departure or to a point where in the performance of his duties he is required to be, and actually returns to his master's business, the owner may be liable. (Citations omitted)." *Manchester Ins. & Indemnity Co. v. Ring*, 589 S.W.2d 350, 355–356 (Mo.App.1979).

Upon leaving the restaurant, Parsons deviated from the route to the bank and for her personal purpose drove to her doctor's office. At the time of the accident, she was still upon the route she had taken for her personal purpose and had not yet returned to the route she would have taken for the employer's business. Had her personal trip been cancelled, she would not have been where she was when the accident occurred. By reason of the limitation established and expressed in the foregoing cases, the employer is not liable for injuries resulting from that accident.

Parsons is not aided by *Tate v. Southwestern Bell Telephone Co.*, 715 S.W.2d 326 (Mo.App.1986), which she cites. In that case, the court carefully noted that the employee was on the logical route required by his employment and any deviation from the employer's business which occurred when he stopped at his step-daughter's for lunch terminated when he drove from the step-daughter's home to continue his work. Moreover, *Gee v. Bell Pest Control*, 795 S.W.2d 532 (Mo.App.1990), also cited by Parsons, observes that *Gee* is analogous to *Tate* as both cases concern workers "where there is no fixed route *or destination.*" *Id.* at 536. (Emphasis added.) This distinction, applicable to this case, has long been recognized. *Kinkead v. Management & Engineering Corp.*, 103 S.W.2d at 547. Nor is Parsons aided by *Shinn v. General Binding Corp.*, 789 S.W.2d 230 (Mo.App. 1990). In that case, the employer had authorized an employee to go to the bank during the lunch hour and return after lunch to her place of employment. The court held that when the employee slipped where she was having lunch, the accident was compensable. In doing so, the court carefully emphasized the following:

"The evidence reveals that part of claimant's responsibility included returning the deposit slip to the office and filing it away. This was to be done at the end of the combined trip. Thus, at the time of injury, employee had not in reality completed the business task." *Id.* at 233.

"There is no 'all embracing definition' of the phrase 'arising out of and in the course of his employment,' and each case must be decided on its own facts and circumstances and not by reference to some formula. (Footnote omitted)." *McCall v. McCall Amusement, Inc.*, 748 S.W.2d 827, 832 (Mo.App.1988). However, the cases have developed a number of tests or principles applicable to the resolution of cases such as this.

"Rather, when an employee is on a trip which combines both a personal and business motive, the question is whether, upon failure of the personal motive, the business task would still have to be com-

pleted." *Shinn v. General Binding Corp.*, 789 S.W.2d at 233.

"Under the principles of *Beckwith* [*v. Standard Oil*, 281 S.W.2d 852 (Mo. 1955)], *supra* the test is whether the negligent act was committed in the prosecution of the business of the employer." *Automobile Club Inter–Insurance Exchange v. Bevel*, 663 S.W.2d at 246.

"The test of when a deviation begins or terminates is not so much a matter of the time consumed and the distance traveled, but rests primarily on whether the employer's or the employee's purpose is being served." *Miller v. Sleight & Hellmuth Ink Co.*, 436 S.W.2d 625, 628 (Mo. 1969).

At the time of the accident Parsons was not on a business task west of the restaurant. She was not in the prosecution of the business of the employer. The purpose being served was that of Parsons. She fails all three tests. Parsons' basic point has no merit.

■ In a separate subpoint, Parsons contends

"[t]he Commission acted arbitrarily and abused its discretion in refusing to hear testimony concerning newly-discovered evidence that appellant completed a second work-related errand just prior to her accident."

The newly-discovered evidence alluded to is her testimony that after getting the medical test kit, Parsons purchased 12–volt light bulbs for the restaurant at a store across the highway from her doctor's office. This, she argues, would have "obliterated the 'deviation' theory".

To support the reception of her newly-discovered testimony, she relies upon the following explanation. At the time of the accident she was driving her 18–year–old daughter's car. After the accident, the daughter found the 12–volt bulbs in her car. Her daughter refreshed her memory of the purchase after the hearing before the ALJ. Her daughter would also testify that "Mrs. Beverly Parsons had made a statement to Vickie two days after the accident that she had purchased the bulbs the morning of the accident."

The Commission observed "we simply do not find her assertion of a refreshed memory occurring after she was denied benefits to be credible." Parsons argues the refusal to hear the additional testimony was error because the Commission could not find the testimony not credible until it had heard the testimony.

"Section 3731, R.S.Mo.1939, Mo.R.S.A., [287.480] provides: 'If an application for review is made to the commission within ten days from the date of the award, the full commission, if the first hearing was not held before the full commission, shall review the evidence, or, *if deemed advisable*, as soon as practicable hear the parties at issue, their representatives and witnesses * * *.' (Italics ours.)

From the plain wording of this section it is apparent that it is within the discretion of the Commission as to whether additional evidence may be heard. (Citations omitted)." *Lewis v. Kansas Explorations, Inc.*, 238 Mo.App. 697, 187 S.W.2d 524, 527 (1945).

Also see *Modlin v. Sun Mark, Inc.*, 699 S.W.2d 5 (Mo.App.1985); *Ellis v. Western Elec. Co.*, 664 S.W.2d 639 (Mo.App.1984). The Commission has adopted regulations governing applications to submit additional evidence. 8 C.S.R. § 20–3.030.

To adopt Parsons' position would deny the Commission discretion to reject proffered testimony to establish a compensable accident only after having heard that testimony, regardless of the inherent incredulous nature of that testimony. The discretion of the Commission is not so limited. The inconsistencies and inherent improbability in the proffered testimony could be properly considered by the Commission in exercising its discretion. Parsons' final point is denied and the judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.

PREWITT, J., recused.