Barbara **LUDWINSKI,**
**Claimant/Respondent,**

v.

**NATIONAL COURIER,**
**Employer/Appellant,**

and

**Insurance Company of North**
**America (Cigna), Insurer.**

No. 64625.

Missouri Court of Appeals,
Eastern District,
Division One.

April 12, 1994.

Edward L. Weiss, Chesterfield, for appellant.

Thomas J. Casey, Casey & Meyerkord, St. Louis, for respondent.

REINHARD, Judge.

Employer appeals from an award of the Labor and Industrial Relations Commission (Commission) in favor of claimant for injuries sustained at the site of employer's annual company picnic. The Commission, with one member dissenting, reversed the decision of the Administrative Law Judge (ALJ) that claimant was not within the course and scope of her employment when injured, and awarded temporary total disability of $1,285.71, permanent partial disability of $12,885.50, and $14,850.12 in medical expenses. We affirm.

The Commission's findings of fact are essentially unchallenged:

The employer had planned a company picnic at a local park facility. One purpose of the picnic was to develop good relationships between the employees and management and to boost morale within the company. The claimant indicated that past picnics had provided her with an opportunity to speak with the owner and vice-president in a friendly atmosphere. The picnic was advertised through posters and notices accompanying payroll checks. Although the company had no scheduled activities at the picnic, the company paid for the event, including all of the food.

Diana Bright, an employee in the accounting management department at National Courier, was designated as the person in charge of the picnic. The claimant asked Ms. Bright if there was anything she could do to assist in coordinating the picnic. Ms. Bright delegated to the claimant the job of meeting the Arctic Ice truck which was due to arrive between 10:00 and 10:30 the morning of the picnic. Although the claimant originally had planned to arrive at the picnic around 1:00 p.m., she agreed to go early.

The claimant arrived at the picnic site as agreed. The employer's witness, Ms. Bright, conceded that there would have been no reason [for] claimant to arrive early the day of the picnic other than the fact that the claimant had been given the check for the ice and the responsibility to oversee the ice delivery. The ice finally arrived at 11:00 a.m. The claimant told the delivery man where to set the ice machine. The claimant also would have paid the ice man had Ms. Bright not arrived at that moment. Ms. Bright took the check which previously had been given to the claimant and paid for the ice. The claimant then stayed at the park rather than going home and returning at a later time.

Shortly thereafter, but still prior to the time the picnic was scheduled to begin, two fellow employees arrived at the park and brought with them some stilts. The claimant attempted to walk on the stilts, fell and seriously injured her ankle. The claimant eventually was diagnosed as having a Triamalone fracture of the right ankle. She was hospitalized six days and underwent three surgeries.

On appeal, employer asserts the commission "erroneously ruled that ... claimant's injuries arose out of and in the course of her employment since [claimant] voluntarily attended [the] company picnic, and suffered an injury while engaged in an activity not directed or controlled in any way by her employer."

This court may modify, reverse, remand for rehearing or set aside the award of the Commission only if the Commission's ac-

tions were unauthorized by law or in excess of its authority, fraudulent, unsupported by the facts as found by the Commission, or unsupported by competent evidence. *Lawson v. Emerson Elec. Co.*, 833 S.W.2d 467, 470 (Mo.App.S.D.1992); § 287.495, RSMo 1986.[1] This case concerns a question of the interpretation and application of law and thus falls within the province of this court's review and correction. *Shinn v. General Binding Corp.*, 789 S.W.2d 230, 231 (Mo.App.1990).

To be compensable under the Worker's Compensation Law, an injury must arise out of and in the course of employment. *Id.*; § 287.120. "Arising out of" means that a causal connection exists between the employee's duties and the injury. *Automobile Club Inter–Insurance Exchange v. Bevel*, 663 S.W.2d 242, 245 (Mo. banc 1984). "In the course of employment" refers to the time, place and circumstances of the injury. *Id.*

Employer recognizes that this injury occurred prior to the amendment of § 287.120, RSMo Supp.1993,[2] which it states would prohibit recovery by claimant in this instance. Employer's argument focuses on cases involving injury at "alleged company sponsored event[s]." These are referred to in opinions as "company picnic" or "company recreational activity" cases. The most recent of the cases cited by employer is *Riggen v. Paris Printing Co.*, 559 S.W.2d 625 (Mo.App.1977). The *Riggen* court stated, in affirming a denial of benefits:

> ... all the cases discussed appear to recognize that under appropriate circumstances an injury sustained by an employee while attending or traveling to or from an employer-sponsored social affair may

arise out of the course of employment so as to be compensable under workmen's compensation.

The cases reveal that no general rule has been developed which can be applied to all situations for the determination of the circumstances under which the injury may be considered to have arisen out of and in the course of employment, with the result that the determination is made by the consideration of various relevant factors, accorded varying degrees of weight, applied to the particular facts and circumstances of each case. *Inasmuch as injuries sustained by an employee in connection with an employer-sponsored event usually occur while the employee is not performing the duties for which he was employed, the inquiry is whether the social affair is sufficiently related to the employment to justify the conclusion that the injury arose out of an in the course of employment.* (Emphasis added). Whether an employee injured while attending or traveling to or from an employer-sponsored social affair was compelled, directly or indirectly to attend, whether the employer derived some benefit from his sponsorship of the function, the extent to which the employer sponsored, controlled, or participated in the activity, and whether the social affair was a benefit or consideration of the employment to which the employee was entitled, have been recognized as the *primary elements* to be considered in determining the compensability of the injury. (Emphasis in original).

The presence or absence of any one factor is not necessarily determinative;

> (a) The employee was directly ordered by the employer to participate in such recreational activity or program;
>
> (b) The employee was paid wages or travel expenses while participating in such recreational activity or program; or
>
> (c) The injury from such recreational activity or program occurs on the employer's premises due to an unsafe condition and the employer had actual knowledge of the employee's participation in the recreational activity or program and of the unsafe condition of the premises and failed to either curtail the recreational activity or program or cure the unsafe condition.

---

1. All statutory citations are RSMo 1986 unless otherwise noted.

2. Subsection 7 was added in 1990. It states:
   7. Where the employee's participation in a voluntary recreational activity or program is the proximate cause of the injury, benefits or compensation otherwise payable under this chapter for death or disability shall be forfeited regardless that the employer may have promoted, sponsored or supported the recreational activity or program, expressly or impliedly, in whole or in part.
   The forfeiture of benefits or compensation shall not apply when:

but this generality is subject, perhaps, to one exception, that being *the element of actual compulsion, which, standing alone, has been deemed sufficient to make an injury sustained in connection with the affair compensable.* In such situation, *the accident arises out of and in the course of the employment, because in attending the function, the employee is engaged in fulfilling the employer's requirements.* (Emphasis added).

*Id.* at 629–30.

Subsequent cases (prior to the enactment of § 287.120(7)) have generally followed the guidelines established in *Riggen.* We agree that employer's argument here would prevail if this were merely a case of an employee injured while attending the company picnic. The Commission found, however, that the injury occurred prior to the picnic and that employee was present to perform a task for employer. Thus, though the Commission discussed the *Riggen* factors in its disposition, the thrust of its holding (though not stated as such) involved the application of the so-called "special task" and "concurrent purpose" doctrines.[3] The commission noted:

> [Employer's picnic coordinator Bright] delegated one of her duties to the claimant. The delegation of that duty carried with it the responsibility to arrive at the park at a particular time and to deliver a company check for the ice.

> \*   \*   \*   \*   \*   \*

As noted in a renowned treatise, a "certain amount of work has to be done to keep the play going" and if an employee performs some duty in connection with an employer sponsored recreational activity, any resulting injury is compensable. 1A Arthur Larson, *Workmen's Compensation Law,* § 22.21(a) (1993). Thus, the Commission concludes that the employee's injury is compensable under the law as it existed in 1989.

▆▆▆ We agree with the Commission's "special task" analysis. As Larson notes, the principles used in recreational injury cases are "closely analogous to those ... of lunchtime injuries, coming and going, and personal comfort cases; ...." 1A Larson's Workmen's Compensation Law § 22.00 (1993). A lunch time/special task case that is somewhat analogous is *Shinn v. General Binding Corp.,* 789 S.W.2d 230 (Mo.App.1990). In *Shinn,* at employer's request, the claimant combined her lunch break with a trip to the bank in order to deposit a check into employer's payroll account. After she deposited the check and obtained a receipt, claimant stopped at a restaurant between three and four blocks from her office. She slipped on a wet floor at the restaurant and injured her hip and back. We found the claimant was, at the time of injury, in the scope of her employment and reversed the Commission's denial of compensation. We held the lunchtime rule[4] to be inapplicable where an employee is injured in the course of performing a special task, service or errand in connection with the employment, or one undertaken under special circumstances to suit the employer's convenience. *Id.*

The "concurrent purpose" doctrine, as explained in *Gingell v. Walters Contracting*

---

3. The commission discussed two important Missouri cases in rendering its decision, *Stout v. Sterling Aluminum Products,* 213 S.W.2d 244 (Mo.App.1948), and *Graves v. Central Electric Power Cooperative,* 306 S.W.2d 500 (Mo.1957). The Commission stated:

> In *Stout,* the employer closed the plant for a company picnic and provided free food, drink and amusement rides for the employees and their families. The purpose of the event was to promote good will, but there was no obligation on the part of any employee to attend. The claimant was injured when he fell upon leaving the picnic. The case is distinguishable because the court held that there was no master-servant relationship at the time of the injury. In this case, however, the Commission

finds the existence of the relationship because of the employee's responsibilities regarding the ice delivery.

> *Graves,* involved a case in which the employee, although not required to be present at the picnic, was asked by his immediate supervisor to attend. While boating at the picnic, the claimant's son fell into the lake. Claimant drowned in his attempt to rescue his son. The court ruled the death compensable. *Graves,* is more closely akin to the instant proceeding.

4. The lunch-time rule ordinarily insulates an employer from liability for injuries sustained by employees with a fixed time and place of work during uncompensated, off-premise lunch breaks. *Shinn,* 789 S.W.2d at 232.

*Corp.*, 303 S.W.2d 683, 688–89 (Mo.App.1957), clearly applies here:

> ... it is not necessary that, on failure of the personal motive, the business trip would have been taken anyway *by this particular employee at this particular time.* It is enough that someone would have had to make the trip to carry out the business mission. If the trip would ultimately have had to be made, and if the employer got this necessary item of travel accomplished by combining it with the employee's personal trip, it would be a *concurrent cause* of the trip, rather than an incidental appendage or afterthought. There is no occasion to weigh the business and personal motive to determine which is *dominant.* (Emphasis in original).

In the instant case, the Commission found that employee was on a mission for employer in attending the picnic early to receive and pay for the ice. The fact that she was also planning to attend the picnic is of no import. Employer's picnic coordinator acknowledged that someone was required to be at the location two hours early to receive and pay for the ice. The business and personal purposes were concurrent, combined at employer's request and for its convenience.

Taken together, we believe *Graves, Shinn* and *Gingell* support a determination that the instant case should not be controlled solely by the "company picnic" or "recreational activity" doctrines.

Employer alternatively argues that, even if claimant was at one time engaged in a concurrent, job related task, she was no longer in the scope of her duties when injured in that: (1) her injury occurred while she was engaged in recreation, and (2) her injuries occurred after the completion of her duties.[5] We examine these arguments in turn.

In *Graves, supra,* it was argued that employee's attempt to rescue his son constituted an abandonment of his employment and broke the causal connection between his employment and the resulting injury and death. The court stated: "an employer reasonably could have foreseen that an employee engaged in stand-by duty while also engaged in boating might meet with an accident incident to the boating." *Graves,* 306 S.W.2d at 503.

Here too, employer could have reasonably foreseen that employee, while engaged in a concurrent purpose trip (employer's business and employee's pleasure), could have been injured during recreation. As to employer's second argument, the Commission's determination that employee's task did not end with the delivery of the check is clearly supported by *Shinn.*[6] There we said:

> "[e]mployer argues that the injury is not compensable because at the time of injury claimant had completed the business part of the journey and was serving only a personal motive. We do not think this characterization is factually accurate.... *More importantly, however, the law does not make the temporal distinction employer suggests. The question is not when the injury occurred. Rather, when an employee is on a trip which combines both a personal and business motive, the question is whether, upon failure of the personal motive, the business task would still have to be completed.* Because the facts in this case support an affirmative answer to the question, we conclude claimant's injury is compensible. [sic]

*Shinn,* 789 S.W.2d at 233 (emphasis added).

We conclude that the facts as found by the Commission clearly bring this case within the "special task" and "concurrent purpose" exceptions to the general rule that recreational

---

5. These were the arguments used by both the ALJ and the dissenting Commissioner. They concluded that claimant's injury was non-compensable because she had already completed her employment-related task and was serving a personal purpose when injured.

6. The Commission stated that the ALJ's finding that employee was not acting for the benefit of employer after she released the money:

> ... ignored the employee's testimony that her only alternative was to leave the premises, go home[,] which was a considerable distance, and return after 1:00 p.m., the time she originally planned to arrive. The employee stated that she did not leave because of the considerable distance between the park and her home. Had it not been for the job the employee had been assigned with respect to the ice delivery, she would not have been at the park at the time of the accident.

injuries are not compensable. The Commission, in concluding that claimant was injured in the course and scope of her employment, did not misapply the law.

Affirmed.

CRANDALL, P.J., and CRIST, J., concur.