**Rodney A. HAWKINS and Emilee E. Hawkins, Plaintiffs-Appellants,**

**v.**

**SCOTT'S GAS OF LOWRY CITY, INC., Defendant-Respondent.**

**No. 13613.**

Missouri Court of Appeals, Southern District, Division One.

Jan. 28, 1985.

B.H. Clampett, Michael J. Cordonnier, Daniel, Clampett, Rittershouse, Lilley, Dalton, Powell & Cunningham, Springfield, for plaintiffs-appellants.

John G. Newberry, Schroff, Glass and Newberry, P.C., Springfield, for defendant-respondent.

GREENE, Judge.

Plaintiffs Rodney and Emilee Hawkins appeal the trial court's judgment affirming a jury verdict against them and in favor of defendant Scott's Gas of Lowry City, Inc.

On February 1, 1981, a fire destroyed the Hawkins' home and personal property therein. They sued Scott's, alleging the fire was caused by the malfunction of a propane tank and regulator leased by the gas company to the Hawkins, and that the malfunction occurred because Scott's had negligently allowed water to enter the propane tank and that this water had caused the regulator valve of the tank to "improperly operate" resulting in the fire in question.

At trial, the Hawkins advanced two different theories of how water had entered the propane gas system. The first was that while performing repairs on the tank, employees of Scott's opened up the tank, allowing moisture to enter. The second was that the gas put in the tank by Scott's contained excessive amounts of water. They claimed that in either of these instances, the excess water would render the system susceptible to explosion and fire.

Scott's offered evidence that there was no excess moisture in the tank, or in the propane gas used to fill customer tanks, including the one leased to the Hawkins.

In their first point relied on, the Hawkins contend the trial court erred in overruling their objection to certain testimony by defendant's president, Don Scott. On direct examination by defense counsel, he was asked,

> Mr. Scott, in your 30 years of providing liquid petroleum in this area, have you ever heard any complaints about your gas being defective or contaminated?

An objection to this question was sustained, with the trial court opining that 30 years was too long a period for the question to have any relevance. Later, counsel asked Scott, "Did your company receive any complaints about any of its customers within one year before or after February 1, 1981, regarding there being moisture in their gas supply?" Scott answered, "Not to my remembrance." The Hawkins' law-

yer then objected to the question on the grounds of relevance, and the objection was overruled.

The Hawkins claim that admission of this testimony permitted Scott's to prove an affirmative fact (absence of moisture in the gas supply of Scott's customers) by negative evidence (no customer complaints), which is legally prohibited, *Kopff v. Miller*, 501 S.W.2d 532, 536 (Mo.App.1973), and that such testimony amounted to proof of freedom from negligence by evidence of no prior accident as condemned in *Kraus v. Auxvasse Stone & Gravel Co.*, 444 S.W.2d 434, 436[1] (Mo.1969).

This argument has no merit. One of plaintiffs' theories advanced at trial was that the bulk supply (gas purchased by Scott's from Getty Oil and resold to Scott's customers) was contaminated with water. In such cases, complaints, or lack of them, from consumers are relevant to corroborate, or disprove, plaintiffs' claim that the bulk supply was contaminated. *Albers Milling Co. v. Carney*, 341 S.W.2d 117, 123[6] (Mo.1960). The cases cited by plaintiffs in support of their argument do not deal with alleged contamination of a bulk supply, and are not in point.

Plaintiffs' remaining point relied on contends that testimony concerning test results made on the tank in question by Scott's expert, Virgil Flanigan, a professor of mechanical engineering at the University of Missouri, Rolla, was erroneously admitted.

■ Flanigan testified that he performed a cobaltus-bromide test on the propane gas tank of the Hawkins to see if there was any moisture vapor in the tank, and that the test showed no water vapor in the propane gas remaining in the tank. The test was performed August 30, 1983. The Hawkins contend that since the test was not made until two and a half years after the fire, and that the tank had not had its hood locked, nor had it been guarded 24 hours a day since the fire, "the essential particulars (the salient conditions) of the test and of the occurrence in suit" were not substantially the same. We have examined the record, and believe that the testimony of Scott's and Flanigan on direct examination showed that there had been no significant change in conditions of the tank from the time of the fire until Flanigan made his test.

■ Experimental evidence is admissible when the experiment is made under conditions substantially similar in essential particulars to the conditions that prevailed at the time of the occurrence. *Blevins v. Cushman Motors*, 551 S.W.2d 602, 610[9] (Mo. banc 1977).

There was no evidence that the delay between the time of the fire and the time of the test altered or contaminated the test sample in any way and we do not find any other change in conditions that affected the test results.

■ The admission or exclusion of experimental evidence is a discretionary matter for the trial court. We do not find any abuse of that discretion in this case. *Salsberry v. Archibald Plumbing & Heating Co., Inc.*, 587 S.W.2d 907, 912[4] (Mo.App. 1979).

Judgment affirmed.

TITUS, P.J., and FLANIGAN, J., concur.