**Larry D. RIGGS, Claimant–Appellant,**

v.

**DANIEL INTERNATIONAL and United States Fidelity and Guaranty Company, Employer and Insurer–Respondents.**

**No. WD 41071.**

Missouri Court of Appeals,
Western District.

May 16, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 1989.

Michael L. McDorman, Versailles, for claimant-appellant.

James K. Pool, Jefferson City, for employer and insurer-respondents.

Before TURNAGE, P.J., and CLARK and FENNER, JJ.

TURNAGE, Presiding Judge.

Larry Riggs filed a claim for Workers Compensation as a result of an injury to his finger sustained on December 10, 1980. The Administrative Law Judge made an award allowing temporary total disability for 94 weeks and for permanent partial disability. Riggs claimed temporary total disability for the period from September 19, 1984 through November 26, 1985. The ALJ found that the medical evidence did not establish entitlement for temporary total disability for that period and that the evidence did not permit the conclusion that benefits were due for that period on the employee's testimony alone.

The Labor and Industrial Relations Commission affirmed by a divided vote and Riggs has appealed the denial of his claim for temporary total disability for the period from September 19, 1984 through November 26, 1985. Reversed and remanded.

Riggs testified to the injury he sustained to his right middle finger and the extensive treatment by a number of doctors which he had received. Riggs testified that he was totally disabled from doing any work between September 19, 1984 and November 26, 1985. He conceded that he did not see any physicians during that period of time.

In March of 1984, Dr. Hart, who had treated Riggs for the pain resulting from his finger injury, wrote a report in which he stated that he believed that Riggs would be capable of returning to work within six months. On September 12, 1984, Dr. Cameron, an orthopedic physician, gave his opinion that Riggs had essentially lost the use of his right arm and was presently unable to do any type of gainful employment. On September 18, 1984, Dr. Cameron stated that Riggs had developed psychiatric problems because of his injury and that he was currently under the care of Dr. Hughes, a psychiatrist. Dr. Hughes testified by deposition that he had followed Riggs from August of 1983 to September 19, 1984. His opinion was that during the period he had followed Riggs and for the foreseeable future (deposition taken on September 19, 1984) he did not see Riggs being able to perform any useful occupation. Dr. Hughes testified that Riggs was suffering from an anxiety state secondary to chronic intractable pain. In addition, Dr. Hughes testified that Riggs' emotional impairment was indefinite and he did not see any prospect of his emotional state changing. He stated that if in the future Riggs' hand could be treated and his physical condition cleared up, then his emotional status should improve. He iterated, however, that he saw no prospect of improvement in the physical impairment.

Dr. Hughes further testified that while some cases analogous to Riggs do improve spontaneously, he did not believe that such would be the case with Riggs' condition. He stated that Riggs' condition was permanent.[1]

On November 26, 1985, Riggs saw Dr. Weeks at Barnes Hospital in St. Louis. Dr. Weeks' diagnosis was reflex sympathetic dystrophy of the right upper extremity. He stated that Riggs was unable to perform any kind of employment, and that it was indefinite when he would be able to return to work. After treatment by Dr. Weeks, Riggs was released to return to work on April 28, 1986.

On this appeal, it is the function of this court to determine whether or not the Commission's findings are supported by competent and substantial evidence and not contrary to the overwhelming weight of the evidence. *Bell v. General Motors Assembly Div.*, 742 S.W.2d 225, 226[1] (Mo.App. 1987). In its brief, the employer contends there was no evidence to establish Riggs was disabled between September 1984 and November 1985. It is Riggs' position that his testimony about his disability and inability to work during the period in question, was sufficient to provide substantial evidence in support of an award of temporary total disability. Moreover, Riggs contends that under *Ford v. Bi–State Development Agency*, 677 S.W.2d 899 (Mo.App.1984), and *Fogelsong v. Banquet Foods Corp.*, 526 S.W.2d 886 (Mo.App.1975), that his testimony, standing alone, was substantial evidence upon which an award could have been based.

In *Fogelsong*, this court stated that "Mr. Fogelsong's own testimony and that of his wife and pastor constitute competent evidence on his disability-free condition prior to his accident and his total disability as a result of the accident." *Id.* at 892[4–9]. This court further held that the Commission was not solely dependent upon the medical evidence but that its finding is to be made from the whole evidence. This court also stated that "[h]is testimony alone, if believed, constitutes substantial evidence to establish that he sustained an injury * * * and * * * 'of the nature, cause, and extent of his disability.'" *Id.* at 892. Quoting from *Smith v. Terminal Transfer Co.*, 372 S.W.2d 659, 665[10] (Mo. App.1963).

The Commission took the view that it could not base an award upon Riggs' testimony alone, because under *Ford* the claimant's testimony would be sufficient only if it were evidence that was within the realm of understanding by lay persons. *Ford* did mention lay understanding of a claimant's testimony, however, the court stated that "valid awards need not always be accompanied by a definite medical diagnosis." 677 S.W.2d at 904. This view of the law by the Commission is erroneous. But even if the

---

1. No claim is made for permanent total disability on this appeal.

Commission was correct that Riggs' testimony was beyond lay understanding, there is medical evidence supporting his testimony that he was totally unable to work during the period in question. On September 19, 1984, Dr. Hughes gave his opinion that Riggs would be unable to work for the foreseeable future and stated that his inability to work was permanent. Dr. Cameron stated on September 18, 1984, that Riggs was unable to do any type of gainful employment. On November 26, 1985, Dr. Weeks found that Riggs was unable to perform any gainful employment and that it was indefinite when he would be able to resume work. The opinion of Dr. Hughes and Dr. Cameron that Riggs was unable to work in September of 1984, and the opinion of Dr. Hughes projecting this inability to continue for the foreseeable future, coupled with the opinion of Dr. Weeks in November 1985 that Riggs was totally unable to perform any gainful employment, supply medical support for the testimony of Riggs.

Under *Ford* and *Fogelsong* the testimony of Riggs was sufficient upon which to base an award of temporary disability. Further, there was medical evidence to support Riggs testimony which the ALJ and the Commission failed to mention. The employer did not introduce any evidence to show that Riggs was not totally disabled during the period in question. The finding by the Commission that Riggs was not entitled to compensation for the period claimed is not supported by competent and substantial evidence.

The award of the Commission that Riggs was not entitled to compensation for temporary total disability from September 19, 1984 through November 26, 1985 is not supported by competent and substantial evidence. Such award is reversed and this cause is remanded to the Commission for further proceedings. *Stepaneck v. Mark Twain Hotel*, 104 S.W.2d 761, 767 (Mo.App. 1937).

All concur.