**Garey D. HAYES, Claimant–Appellant,**

v.

**HUDSON FOODS, INC., Employer–Respondent.**

**No. 17470.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 21, 1991.

Stephen E. Walsh, Poplar Bluff, for claimant-appellant.

James A. Cochrane, III, Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for employer-respondent.

SHRUM, Presiding Judge.

In this workers' compensation case, the employee Garey D. Hayes appeals from the Final Award entered by the Labor and Industrial Relations Commission denying him compensation.

The issue is whether there is sufficient evidence to support the Commission's finding that the claimant was not entitled to benefits because his left arm carpal tunnel syndrome was not work related and was not an occupational disease. An underlying issue is whether the Commission committed prejudicial error by admitting evidence of lack of other incidents of carpal tunnel syndrome affecting other employees performing work similar to that performed by the employee.

Finding no error, we affirm.

### FACTS

In August 1987, the employee Garey D. Hayes and his wife went to work for the employer Hudson Foods, Inc., as farm managers of a poultry production enterprise. On this job, they were responsible for a 160,000 square foot building which housed 230,000 live chickens. They were required to do whatever was needed to care for and raise baby chickens to broiler size. As designed, the poultry farm had automatic conveyor systems to feed and water the chickens. However, manual labor was required on the job, especially when breakdown of the automatic systems required hand feeding and watering. Additionally, the employee and his wife spent from 2 to 4 hours per day picking up dead chickens and carrying them out of the chicken houses in 5-7 gallon buckets.

In early March 1988, the employee broke the fourth finger on his right hand.[1] After being initially treated elsewhere for that injury, he went to the Poplar Bluff Veterans Hospital in April and May 1988 for treatment of the fractured finger. At that time, the employee also complained of (a) "tingling" in his left hand with pain going into his left wrist and into his shoulder, and (b) weakness of the left elbow and wrist.

An x-ray examination of his right hand, both elbows, and both wrists was requested at that hospital on April 8, 1988. Fol-lowing that exam, the radiologist included in his recorded findings that the "[d]istal end of left ulna shows some contour irregularity with alteration in distal radio-ulnar relationship probably representing long-standing subluxation which would be congenital or less likely post-traumatic." From the VA Hospital's record of the employee's admission on May 2, 1988, we learn that he reported the symptoms in his arm and wrist had "become progressively worse since he injured his left elbow 6½ months" before. That record conflicts with the employee's trial testimony that his left upper extremity symptoms first appeared in April or May 1988.[2] On cross-examination, the employee admitted that he injured his left elbow six months before his admission to the VA Hospital but testified that he had not reported the fall for fear he would be fired.

Following nerve conduction studies, the employee was diagnosed by VA physicians as having a median nerve compression syndrome of the left hand of "undetermined etiology." For this condition he was initially treated with medication but, ultimately, in December 1989, he was treated surgically to release the nerve. Physicians at the Veterans Hospital did not rate the employee's permanent disability. However, Dr. Brenda Kluttz, a St. Louis physician, rated the employee's disability as 25% "of [the] left hand" but expressed no opinion as to the cause of the disability.

Although the employee testified that his job duties involved a significant amount of manual labor, the employer's evidence on that issue was contradictory. For example, Dale McCullough, a broiler supervisor who worked directly over the employee at the time of his alleged wrist injury, testified that the employee's job duties did not involve an extensive amount of repetitive wrist movement. Although he did testify that it would take approximately four hours per day to pick up the dead chickens,

---

1. That injury was the subject of a separate claim (Injury No. 88–046835) and the employee does not claim that the accident which caused the injury to his right hand caused or contributed to the left arm-wrist carpal tunnel syndrome.

2. Although the employee denied any long-standing problem with his left wrist, he did admit that he underwent a carpal tunnel release to his right hand in 1983.

he further testified that, based upon his observations, the employee's wife did most of the work in regard to picking up the chickens. Stanley Joyner, a broiler products manager, testified that the employee's job activities did not involve repetitive use of his wrist and that the employee could work at his own pace and rest when necessary. He also testified that he was familiar with numerous other couples who managed other broiler facilities for the employer and that no other employees had developed carpal tunnel syndrome as a result of the work performed on the poultry farms.

The Administrative Law Judge determined that "[b]ased on the lack of medical evidence supporting the employee's allegations, and based on the credible testimony of the employer's witnesses, I find that the employee did not sustain a work related accident or occupational disease." He further concluded that the employee's diagnosed carpal tunnel syndrome (left arm and wrist) is not medically causally connected to his work related activity. The Commission, by a divided vote, affirmed the judge's opinion. The employee appeals the Commission's decision.

## DID THE COMMISSION ERR IN FINDING THE EMPLOYEE'S LEFT ARM CARPAL TUNNEL SYNDROME WAS NOT JOB RELATED?

In Point I, the employee claims that the Commission erred in finding that the employee's left arm and wrist carpal tunnel syndrome was not medically causally connected to his work activity. He claims that finding was error because it was not necessary that there be an expert medical opinion directly relating the disease to his job. His position is that (a) his testimony describing the nature of his work, (b) plus the evidence that the left arm carpal tunnel syndrome "arose simultaneous with his work," (c) plus the lack of evidence of any "other cause associated with the onset of the disease," when considered together, establishes his left arm carpal tunnel syndrome was job related. In his brief, the employee says that his testimony, *"if believed,* constituted substantial evidence to

establish that he sustained the injury, its cause and the extent of his disability." (Emphasis added.) He cites *Riggs v. Daniel International,* 771 S.W.2d 850, 851 (Mo. App.1989); *Ford v. Bi–State Development Agency,* 677 S.W.2d 899, 902 (Mo.App. 1984); *Fogelsong v. Banquet Foods Corporation,* 526 S.W.2d 886, 892 (Mo.App.1975); *Smith v. Terminal Transfer Company,* 372 S.W.2d 659, 665 (Mo.App.1963), in support of his argument. We recognize that those cases so hold but note that each involves accidental injuries to the claimants and not occupational diseases.

As a general rule, a claimant's medical expert in an occupational disease case must establish the probability that the disease was caused by conditions in the work place. *Sheehan v. Springfield Seed & Floral,* 733 S.W.2d 795, 797 (Mo.App. 1987). There must be medical evidence of a direct causal connection between the conditions under which the work is performed and the occupational disease. *Estes v. Noranda Aluminum, Inc.,* 574 S.W.2d 34, 38 (Mo.App.1978). Where workers' compensation benefits are sought for a job-related carpal tunnel syndrome, a claimant must submit an expert medical opinion establishing a probability that working conditions caused the disease even though they need not be the sole cause. *Prater v. Thorngate, Ltd.,* 761 S.W.2d 226, 230 (Mo.App. 1988). Applying the general rule enunciated in *Sheehan, Prater* and *Estes,* we find no error in the Commission's determination that the employee's carpal tunnel syndrome was not medically causally related to his job because of "the lack of medical evidence," especially when that determination was also based upon a determination that the employer's witnesses were credible.

Even if *Riggs, Ford, Fogelsong,* and *Smith* are applied, we must reject the employee's argument in Point I. His argument ignores the Commission's determination that the employer's evidence was credible. The Commission found that no doctor related the employee's disease to his job and that the medical records did not support a finding that his carpal tunnel syn-

drome was related to his job activities. We agree. The record fully supports that determination. But that was not the singular basis for denying the employee's claim as he seems to believe. Additionally, the Administrative Law Judge chose not to believe the employee's testimony about his job duties and the work he actually performed. This is evident from reading the following from his decision.

> Based on the lack of medical evidence supporting the employee's allegations, *and based on the credible testimony of the employer's witnesses*, I find that the employee did not sustain a work related accident or occupational disease. (Emphasis added.)

In the total absence of medical testimony concerning causation, testimony concerning the employee's job duties was determinative of his claim. This follows because the appellate courts of this state have recognized that carpal tunnel syndrome is an ordinary disease of life but it can be an occupational disease where a job produces a greater exposure. *Prater*, 761 S.W.2d 226; *Collins v. Neevel Luggage Manufacturing Company*, 481 S.W.2d 548, 554 (Mo. App.1972). "[T]he distinction here is that, whereas people use their hands and wrists frequently every day in and out of occupations, their exposure to carpal tunnel syndrome is casual compared to the massive exposure to which a workman is subjected who is required to perform an occupational duty involving identical hand and wrist movements" with much greater frequency and for a sustained duration. *Id.* at 554. We have said the determinative inquiry involves two considerations: (1) whether there was an exposure to the disease which was greater than or different from that which affects the public generally, and (2) whether there was a recognizable link between the disease and some distinctive feature of the employee's job which is common to all jobs of that sort. *Jackson v. Risby Pallet and Lumber Co.*, 736 S.W.2d 575 (Mo.App.1987). In this case, the evidence on these questions was in substantial conflict.

To illustrate, Stanley Wayne Joyner, an employer witness, testified that the em-ployee's job activities did not involve the repetitive use of the wrist, that he could work at his own pace, and he could take rest periods. No supervisor was present on the premises to regulate the amount of work to be done. Dale McCullough also testified that the job did not require repetitive movements of the wrists on a continuous basis and that the job did not require heavy lifting all day. Joyner testified that from two to four hours per day was required to carry out chickens but the employee and his wife shared those responsibilities. McCullough testified that the employee's wife did most of that work. There was conflict between the evidence from the employer and employee about the distance that the chickens had to be carried, the frequency of that work, and the weight of the buckets. There was also conflict in the testimony about the amount of time that the automated feeders were down, which necessitated hand feeding. Joyner testified that because the employee and his wife worked in a new facility most of the time, there was no significant amount of hand feeding performed by them between October 15, 1987, and May 1988. Additionally, Joyner testified that he grew up on a chicken farm, had been in the business 17 years, and knew six long-term employees of the employer who had a combined service of 150 to 175 years and none had developed carpal tunnel syndrome.

While the employee's testimony differed substantially, the Commission found the employer's witnesses to be credible. We cannot substitute our judgment for that of the Commission. *McFarland v. Bollinger*, 792 S.W.2d 903, 904 (Mo.App. 1990). We review workers' compensation cases in the light most favorable to the award of the Commission and uphold the decision of the Commission if it is supported by competent and substantial evidence on the whole record. *Phillips v. Ozark Bank*, 803 S.W.2d 662, 663 (Mo.App. 1991); *McFarland*, at 904. We must disregard any evidence which might support a finding different from that of the Commission and that is true although a finding of the Commission to the contrary is sup-

ported by the evidence. *Phillips*, 803 S.W.2d at 663. Adhering to those principles and limiting the scope of our review in a workers' compensation case as stated in Mo. Const. art V., § 18 and § 287.495, RSMo 1986, we find no error in the Commission's determination that the employee failed to meet his burden of proving an occupational disease which was medically causally related to his injury.

## DID THE COMMISSION ERRONEOUSLY ADMIT EVIDENCE THAT OTHER EMPLOYEES DID NOT SUFFER FROM THE DISEASE?

In Point II, the employee claims that the Commission erred in admitting evidence of the non-occurrence of carpal tunnel syndrome in other employees of the employer. He argues that there was no proper foundation laid to show (a) that the evidence was relevant, (b) what inquiry the employer made of its other employees, and (c) whether the other employees were exposed to the same type work requirements and job stress.

First, we note that the employee did not properly preserve the issue for appellate review. A litigant objecting to evidence has the burden of making the basis of his objection "reasonably apparent" to the court. *Crabtree v. Reed*, 494 S.W.2d 42, 44 (Mo.1973). Here, the employee's only objection was that the testimony offered by the employer about the lack of carpal tunnel syndrome in other employees was not relevant.[3] He made no objection to the proffered testimony on the basis of lack of foundation. Ordinarily an objection of "failure to lay a proper foundation" is too general to warrant sustaining. *Mathis v. Glover*, 714 S.W.2d 222, 225 (Mo.App. 1986); *Fuerst v. St. Louis Public Service Company*, 368 S.W.2d 550, 553 (Mo.App. 1963); 88 C.J.S. *Trial* § 124c, at p. 252 (1955). As to his relevancy objection, he did not specify why the testimony was irrelevant or why it was prejudicial. On appeal, the employee advances reasons to bolster his objection; no such reasons were stated at trial. *Bailey v. Valtec Hydraulics, Inc.*, 748 S.W.2d 805, 807 (Mo.App. 1988). An objection to a question should be so specific that the judge can realize what rule of evidence is being invoked and why that rule would exclude a responsive answer. *Id*. The employee's bare objection to the testimony on the basis of relevancy without specifying why is too general to reserve the administrative law judge's ruling for appellate review. *Id*. *See also Gant v. Hanks*, 614 S.W.2d 740, 744 (Mo. App.1981); *Meadows v. Kinser*, 603 S.W.2d 624, 626 (Mo.App.1980).

In addition, we believe the testimony was relevant. In *McJunkins v. Windham Power Lifts, Inc.*, 767 S.W.2d 95, 98 (Mo.App.1989), this court found that the trend is toward admissibility of proof of the absence of other accidents to show, among other things, (1) the absence of the defect or condition alleged, and (2) the lack of a causal relationship between the injury and the defect of the condition charged. McCormick on Evidence § 200, pp. 591–592 (3d ed. 1984). *See also Siebern v. Missouri–Illinois Tractor & Equip.*, 711 S.W.2d 935, 941 (Mo.App.1986); *Hawkins v. Scott's Gas of Lowry City, Inc.*, 685 S.W.2d 247, 248 (Mo.App.1985); *Riney v. Zenith, Radio Corp.*, 668 S.W.2d 610, 611 (Mo.App.1984). While we find no Missouri cases directly in point, we believe the absence of carpal tunnel syndrome in other employees was relevant to inquiry of whether there was a recognizable link between the disease and some distinctive feature of the employee's job which was common to all jobs of that sort. *Jackson*, 736 S.W.2d at 578. Such evidence was relevant to show a lack of a causal relationship between the disease and the job.

Finally, whether a good and sufficient foundation was laid is within the sound discretion of the court. *McJunkins*, 767 S.W.2d at 100. We find no abuse of

---

**3.** The objections by the employee were: "Object to the relevancy of any other people working there and any statistics or anything like that as not being relevant to this case" and "I'm going to object to that. That is not responsive to the question. I was going to object to any statistics or any prior claims as being irrelevant."

that discretion given the considerable testimony of witness Joyner about his acquaintanceship with other employees, their records, and the nature of their employment.

We affirm.

MAUS and MONTGOMERY, JJ., concur.