Jeffrey PATTERSON,
Claimant/Respondent,

v.

ENGINEERING EVALUATION
INSPECTIONS, INC.,
Employer/Appellant.

No. 67789.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 21, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 17, 1996.

Evans & Dixon, Raymond J. Flunker, Jeffry M. Proske, St. Louis, for Appellant.

C. Dennis Barbour, St. Louis, for Respondent.

PUDLOWSKI, Judge.

This is an appeal from the Labor and Industrial Relations Commission's (LIRC) award of workers' compensation benefits to Jeff Patterson, respondent herein. Engineering Evaluation Inspections, Inc., henceforth appellant, contests the LIRC's award on the grounds that respondent was not its employee, that respondent did not satisfy the statutory notice requirement that is a precondition to recovery of medical expenses, and that the evidence was insufficient to support the LIRC's award of temporary total disability benefits. We affirm the LIRC's award.

In reviewing an award of workers' compensation benefits, this court defers to the fact-finding of the LIRC. *Cole v. Town & Country Exteriors,* 837 S.W.2d 580, 583 (Mo.App.E.D.1992). Accordingly, we will accept the factual findings expounded in the LIRC's Final Award; we will also credit the evidence in the record which otherwise supports the LIRC's ruling. Under Missouri's workers' compensation regime, both the LIRC and this court resolve any doubts in favor of the employee, and this court will affirm an award as long as it is supported by substantial competent evidence. *Fischer v. Archdiocese of St. Louis,* 793 S.W.2d 195, 198 (Mo.App.E.D.1990).

Thomas Sagehorn is president of appellant, and he is also president of Engineered Constructions, Inc. (ECI), a company that is no longer in business but which shared office space with appellant during the period relevant to this case. In August, 1988, Sagehorn approached one Steve Barnett about working on a remodeling project for a Mr. and Mrs. Hyland; Sagehorn also told Barnett another worker was needed, and Barnett contacted respondent. Respondent testified, and the LIRC accepted, that Barnett told respondent they would be working for appellant on the project.

There was evidence that both of Sagehorn's businesses were involved in the Hyland project: a check issued by the Hylands and payable to ECI was introduced at the hearing, but there was also evidence that Mrs. Hyland had one of appellant's business cards in her possession around the time of

respondent's injury. Sagehorn was frequently present at the Hyland residence, overseeing the re-modeling project. He required respondent to furnish basic employment data (name, address, social security number), and personally issued orders to respondent on the correct way to sand and paint, as well as on the attire that respondent was to wear while working. Sagehorn issued respondent the tools which he used on the re-modeling project, and dispatched respondent to pick up supplies from two hardware stores.

Respondent was injured on November 9, 1988, when he and John Choma, who also worked for appellant, were attempting to load a refrigerator onto a moving truck. Respondent informed Choma of his injury at that time, and asked that this information be communicated to Sagehorn. The next day respondent informed Barnett of his injury and asked Barnett for Sagehorn's phone number, though Barnett did not give it to him. Respondent finally obtained Sagehorn's business phone number and address from the appellant's business card, which Mrs. Hyland provided. Although respondent was denied an audience with Sagehorn despite repeatedly calling appellant's place of business, as well as showing up there in person, he did inform appellant's secretary of his injury and his need for medical attention. Respondent was treated for pain in his lower back and legs and did not work for at least eight weeks.

Respondent sought redress under the workers' compensation statute before the LIRC, and was awarded, inter alia, total temporary disability benefits for eight weeks in the amount of $213.13 per week, and $1,571.00 for his medical bills.

### Employer–Employee Relation

■ Appellant's first argument before this court is that respondent was either an independent contractor or an employee of Barnett but, in any event, was not employed by Sagehorn or either of his companies. Missouri courts have developed a multi-factored approach for determining whether a worker is correctly classified as an employee for workers' compensation purposes, as distinguished from an independent contractor; the same analysis is useful in determining which

of several entities actually employed the worker. *See Dawson v. Home Interiors & Gifts,* 890 S.W.2d 747, 748 (Mo.App.W.D. 1995). We will mention those factors that apply to the present case, but essentially our inquiry is two-fold: whether the worker was performing services for the alleged employer, and whether those services were controllable by the alleged employer. *Hill v. 24th Judicial Circuit,* 765 S.W.2d 329, 331 (Mo.App. E.D.1989).

We note at the outset that there is virtually no evidence in the record to support the proposition that respondent was an independent contractor. This is so because he literally did nothing independently: the amount he was paid, the hours he worked, the tasks he performed and the manner in which he performed them, and indeed the clothes he wore to work were all dictated by others. Respondent was, therefore, an employee rather than an independent contractor, and the question becomes, who was his employer?

Appellant places great emphasis on the fact that respondent was paid by Barnett. Payment of wages is one of the factors relevant to the existence of an employment relation, but it is not in itself determinative. *Hill* at 331. Our inquiry is whether there is substantial competent evidence to support the LIRC's finding that appellant was the employer.

We have little difficulty concluding that Sagehorn controlled the details of respondent's labor at the Hyland project and that the services rendered by respondent were at the behest of Sagehorn. Besides telling respondent how to sand and paint and what to wear, Sagehorn furnished the tools that respondent used, ordered respondent to take delivery of certain materials for use on the project and, in fact, instructed respondent to assist in the loading of the refrigerator, the very task leading to his injury. Under the inquiry set forth in *Dawson,* these facts support a finding that Sagehorn was respondent's employer. Appellant points out, however, that Sagehorn may have done these things in his capacity as president of ECI rather than as president of appellant.

The cornerstone of appellant's argument is the contention that ECI was in the construction and re-modeling business, while appellant only does engineering and inspection work. The suggested significance of this difference is that Sagehorn's actions in this case had to have been performed in his role as president of ECI, which is, therefore, reasoned to be respondent's employer. However, the only evidence which supports this bright-line distinction between the two businesses is the testimony of Sagehorn himself, which the LIRC was free to disbelieve.

Mrs. Hyland's possession of appellant's business card permits the inference that appellant was a contractor on the Hyland remodeling project. Other evidence indicates that appellant's business activities encompassed more than mere inspection and engineering: Choma, who indisputably works for appellant and not ECI, helped respondent move the refrigerator from the Hyland house, an activity clearly not within Sagehorn's self-serving description. Barnett's statement to respondent, that they would be working for appellant, and the testimony that respondent picked up materials from a hardware store, which were on hold for appellant, constitute substantial evidence that appellant, rather than ECI, was respondent's employer. On these facts, we will not disturb the LIRC's finding that an employment relation existed between appellant and respondent.

### Notice

Under § 287.420 RSMo (1986), a workers' compensation claimant seeking to recover the cost of medical treatment must give written notice of his injury to his employer within 30 days of his injury, although failure to do so is excused upon a showing of good cause or upon a showing that the employer was not prejudiced by the failure. Respondent did not provide written notice to appellant, but the LIRC found good cause for failing to do so, essentially reasoning that respondent made diligent efforts to contact Sagehorn and that he should not be punished for Sagehorn's successful evasion of these efforts.

The fact that an employee has made diligent efforts to notify his employer of a work-related injury may well constitute good cause for failure to provide written notice to the employer. The LIRC thought so, and though we are not bound by the LIRC's interpretation of the law, we accord some deference to its interpretation of the statutes which it administers. However, we need not decide this issue because the LIRC's award can be upheld under an alternative rationale.

Respondent informed Choma, Barnett and the secretary at appellant's office of his injury; the secretary is certainly an agent of appellant, and the other two may be, so that when respondent notified them of his injury and his need for medical treatment, he effectively gave actual notice to appellant. Where a workers' compensation claimant gives his employer actual notice of his injury, he has made a *prima facie* case that the employer was not prejudiced by failure to provide written notice, and the burden then shifts to the employer to show prejudice. *Klopstein v. Schroll House Moving Co.*, 425 S.W.2d 498, 503–504 (Mo.App.E.D.1968). Appellant has made absolutely no showing that it was prejudiced by lack of written notice and, in fact, does not even contest the reasonableness of respondent's medical bills. Point denied.

### Evidence of Temporary Total Disability

Appellant challenges the LIRC's award of temporary total disability benefits to respondent on the ground that there is no medical evidence to support the contention that respondent was unable to work for the eight weeks for which benefits were awarded. However, a claimant's testimony regarding his injury is sufficient evidence on which to base an award if the subject of the testimony is within lay understanding. *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 704 (Mo.App. W.D.1973). Although the medical causes of an injury may not be readily comprehensible to lay persons, a layman is capable of forming an opinion as to whether he is capable of working or not. *Riggs v. Daniel International*, 771 S.W.2d 850, 851–2 (Mo.App.W.D. 1989). Furthermore, as in *Riggs*, respondent's testimony that he could not work is corroborated by medical evidence of his injuries. Finally, we find it relevant, as did the

*Riggs* court, that appellant has presented no evidence to refute respondent's temporary total disability claim.

The award of the LIRC is affirmed in its entirety.

AHRENS, P.J., and GRIMM, J., concur.